Nov. Term, 1840.

LINTON
v.
POTTS.

---

LINTON and Others, Infants, &c., *v.* POTTS and Others.

A bill in equity to carry a former decree into execution is proper, when, from the neglect of the parties, or from some other cause, subsequent events have intervened which render the further aid of the Court necessary; and even a person not a party to the decree, when his rights are affected by it, may resort to this remedy.

Nov. Term,
1840.

Linton
v.
Potts.

The minor heirs of *L.* and his administrators obtained a decree, in 1835, against the devisees and mortgagee of *D.*, deceased, by which the administrators were to pay the mortgagee a certain sum of money within a given time—the latter to release his interest to the devisees in certain land covered by the mortgage—and the devisees, on or before the payment, to convey said land to the heirs, who were in possession. One of the administrators being called on at the expiration of the given time, refused to pay the money to the mortgagee, and the latter then, on receiving a note for it from one of the devisees which was afterwards paid, released to the devisees his interest in the land. In 1837, the devisees brought an action of ejectment against the heirs for the land and recovered; and the latter, soon afterwards, tendered to the former the money, &c., which was refused. *Held*, that the heirs being all minors, might, by a suit in chancery, notwithstanding the land had risen considerably in value, obtain an injunction of the judgment in ejectment, and a conveyance of the land from the devisees, on payment to them of the money, &c.

Wednesday,
November 25.

Dewey, J.—This was a proceeding in chancery commenced in the *Vigo* Circuit Court, and transferred to this Court on account of the interest of the president judge. The cause has been heretofore submitted for final hearing on bill, answers, exhibits, and depositions.

The material facts are the following: On the 13th of *March*, 1834, a written contract was made between *George W. Dewees* and *William C. Linton*, by which the former agreed to convey to the latter a certain quarter section of land. *Linton* agreed to pay *Dewees* 160 dollars, whenever *Dewees* should convey to him an unincumbered title in fee-simple to the premises, and the further sum of 400 dollars in equal annual payments from the date of the contract. It was further stipulated that *Linton*, if desired to do so by *Dewees*, should secure the payment of the 400 dollars by a mortgage of the premises, after the payment of the 160 dollars, and after the conveyance of title thereupon by *Dewees*. *Dewees* gave *Linton* possession under the contract, which he and his heirs have held ever since. This quarter section of land had been previously incumbered by *Dewees*. In 1832, he mortgaged it, together with four other tracts of land, to *John D. Early*, in trust to secure to *Elizabeth Dewees*, the wife of *George W. Dewees*, 2,000 dollars for her separate maintenance. At the time of entering into the agreement between *Dewees* and *Linton*, there was an understanding between

them—not incorporated in the written agreement however —that *Dewees* should procure from *Early* a relinquishment of the lien to *Linton*, and that the purchase-money, 560 dollars, should be applied in part payment of the money due *Early* as trustee. *Dewees* died in 1834, and devised his estate, including the land in controversy, to *Anne Potts* and *Elizabeth Patterson*, the latter having afterwards married *David Potts*. *Linton* died intestate in *February*, 1835. In *April* of that year, the heirs of *Linton*, being then and now all minors, together with his administrators, *Thomas H. Blake* and *Lucius H. Scott*, filed their bill in equity against the devisees of *Dewees*, *Early*, and Mrs. *Dewees*, for a specific performance of the contract before stated. In addition to the above facts, they alleged that *Linton* was ready and willing at all times during his life, to perform his part of the agreement; that he had prepared a deed for the land, had presented it to *Dewees* to be executed, and had offered, upon its execution, to pay the 160 dollars, and to secure the residue of the purchase-money, 400 dollars, according to the stipulations of the contract. And they also alleged, that the administrators of *Linton* had been always ready since his death, to perform his part of the agreement. The defendants answered the bill, and without controverting any of its allegations, consented to a decree, which, on the 25th of *November*, 1835, was rendered as follows: That *Thomas H. Blake* and *Lucius H. Scott*, the administrators of *Linton*, should pay to *Early* as trustee of Mrs. *Dewees*, the amount of the purchase-money in ninety days; that *Early* should execute to *Anne Potts* and *David Potts* and *Elizabeth* his wife, the devisees of *Dewees*, a release of his interest in the quarter section of land; and that the devisees should, on or before the payment of the money, convey to the heirs of *Linton* a title in fee-simple to the same, and deliver over to them such title papers as were in their possession; and that they should pay the costs of the suit.

At the expiration of the ninety days limited by the decree, all the money secured to Mrs. *Dewees* having been previously paid, except that due by the decree, *Early* and *David Potts* called on one of the administrators of *Linton* and requested him to comply with the decree, informing him that the other par-

ties to it were ready on their parts to do so, provided he paid the money. The administrator declined. *Early* then proposed to *Potts* to release the mortgage to him upon his paying the money due by the decree from the administrators. *Potts* offered to execute his note for it with ten *per cent.* interest, which was accepted by *Early*, and the mortgage was released to the devisees. The money was paid by *Potts* subsequently—at what particular time does not appear.

In *May* 1837, the devisees commenced an action of ejectment against the heirs of *Linton* in the *Vigo* Circuit Court, and, at the *November* term thereof of that year, recovered judgment for the land in question, and for their costs taxed at 11 dollars and 32 cents. In the subsequent *December*, *Linton's* heirs tendered to the devisees of *Dewees* the purchase-money and interest, which were refused. At the next term of the Circuit Court, they filed their bill against the administrators of *Linton* and the devisees of *Dewees*. The land, in the mean time, had increased in value to two or three times the price which *Linton* had contracted to give for it. The object of this bill is to enjoin the judgment in ejectment, and to enforce the execution of the decree rendered by the Circuit Court on the 25th of *November*, 1835. The administrators have not answered, but, by agreement of the parties, the cause stands as if they had answered and confessed the bill. The devisees have answered, and claim that, under the circumstances above stated, the heirs of *Linton* have no equity against them. The money which was tendered by the heirs of *Linton* to the devisees of *Dewees* is not in Court, but all objection on that score is waived by consent.

Bills to carry a former decree into execution are sometimes resorted to, though they are not very common, nor do the principles governing them seem to be distinctly defined. Elementary writers of good authority, however, lay down the law to be, that such bills will be sustained, when, from the neglect of the parties, or some other cause, subsequent events have intervened, which render the further aid of the Court necessary; and even a person not a party to the decree, when his rights are affected by it, may resort to this remedy. Mitf. Pl. 95.—Cooper's Pl. 99.—Story's Eq. Pl. 343.

Nov. Term,
1840.

LINTON
v.
POTTS.

The devisees of *Dewees* place their defence on two grounds. 1st, that the *time* of the payment of the purchase-money, both by the contract between *Dewees* and *Linton*, and by the decree, was essential; and that the failure of *Linton's* administrators to pay it within the time limited, operated as a forfeiture of the rights of his heirs under the decree; and, 2dly, that it would be inequitable to compel the devisees to convey the land to the complainants, after they had themselves paid the money which the administrators should have paid, and after a lapse of time in which the land had greatly increased in value.

Courts of equity formerly paid but little attention to the mere *time* at which the stipulations of a contract were to be performed, and carried the doctrine of relief, notwithstanding a want of punctuality in this respect, to an extravagant extent. But the rule has been gradually restricted; and it may now be considered as an established principle in equity, as well as in law, that when from the nature and terms of a contract, the parties design to make time material, a failure of performance in that particular will be as fatal as a failure to perform any other stipulation of the agreement. 2 Story's Eq. 85, 86, *n.* 1, and the authorities there cited.

If we follow the defendants behind the decree, and examine the contract made between *Dewees* and *Linton*, we find that time was not of its essence. The latter was bound to pay the former 160 dollars of the purchase-money, whenever the land should be conveyed to him free from incumbrance, for doing which no time was specified; and the residue, 400 dollars, was to take the form of a debt secured by mortgage. But even had time been material in that contract, the original bill alleged the readiness of *Linton* and his administrators to perform every thing which the agreement required of them. This allegation is virtually admitted to be true by the answers, in which the defendants, without denying any thing, consented to the decree as it was rendered.

The decree itself, evidently, was not designed to subject the heirs of *Linton* to a forfeiture of their rights under it, upon the non-payment of the money by the administrators. Surely, had the Court or the parties intended to expose the interest of minors to such a risk, the intention would have

been clearly expressed. The administrators were very pro-
perly decreed to pay the purchase-money; they represented
the funds chargeable with that debt. To permit their failure
to pay it to operate as a penalty upon the heirs, would be
not only to disregard the rule that infants shall not suffer for
their own laches, but it would render them responsible for the
default of others. The decree afforded ample security to the
rights of all parties concerned without so rigid a construction.
The administrators could have been compelled to a speedy
performance, either by attachment at common law, or by
execution for the money under our statute; and the power to
compel them lay in the hands of the devisees or of *Early*.
The heirs had a right to the benefit of this decree without
advancing money themselves; they were required to pay
none. It is not reasonable that they should be deprived of
their right in consequence of the neglect of the administrators
to pay the money, nor by the subsequent payment of it by the
devisees, who, under the circumstances of the case, were
volunteers in that matter. It is true, *Early* could have
looked to the mortgage, but there is little probability he would
have done so, with the more speedy remedy against the
administrators on the decree within his power. Had the
devisees stood aloof, he would have collected the money from
the administrators, and then there could have been no pre-
tence on the part of the devisees for keeping the land. Hav-
ing thus voluntarily paid the money, they should themselves
have enforced the decree against the administrators, who
were bound to pay it, instead of attempting to work a for-
feiture against the heirs, who were not bound to pay it. The
devisees represented *Dewees;* had he been alive and a party
to the decree, he could not, certainly, have stepped forward
and done what he could have compelled the administrators to
do, and thereby have extinguished the claim of these infant
heirs to the land.

We have already seen that the equity of the complainants
is not impaired, in consequence of the failure of the adminis-
trators to pay the money due by the decree, nor by the after
payment of it by the devisees. As little is it affected by the
enhanced value of the land since the date of the contract, or
since the decree. There was no inadequacy of consideration

when the agreement was made. A subsequent increase of value, surely, is no cause for rescinding the contract—and to refuse to enforce the decree would be tantamount to annulling the agreement. Had the land fallen in value, the devisees could, at any time, have compelled the administrators to pay the money, and the heirs to take the land under the decree.

We think the complainants are entitled to relief. As they have tendered the purchase-money and interest to the devisees, which would have been now in Court but for the agreement of the parties, they will be required to produce it. As the difficulties from which this suit has originated were occasioned by the delinquency of the administrators, they will be decreed to pay the costs, and the costs of the ejectment.

*Per Curiam.*—It is decreed that the complainants, within sixty days, bring into Court the sum of 728 dollars with interest till paid, for the use of the defendants *Anne Potts* and *David Potts* and *Elizabeth* his wife; that thereupon the said defendants execute to the complainants a conveyance in fee-simple, with general warranty, for the land, &c., and should they fail to do so, on payment of the money, *Lucius H. Scott* is hereby appointed a commissioner to convey the land to the complainants; that the judgment in ejectment be perpetually enjoined, &c. Provided, however, that if the complainants fail to bring the money into Court within said time, they shall lose the benefit of this decree, &c. It is further decreed that the administrators pay the costs of the action of ejectment and of this suit.

*J. Farrington* and *S. B. Gookins*, for the complainants.
*A. Kinney* and *C. W. Barbour*, for the defendants.