## Case No. 14,259.

TURNER et al. v. INDIANAPOLIS, B. & W. RY. CO. et al.

[8 Biss. 380.] [1]

Circuit Court, D. Indiana and S. D. Illinois. Dec., 1878.

COURTS — FEDERAL JURISDICTION — REMOVAL OF CAUSES — DECREES — AMENDMENTS — MASTER'S SALE—ADVANCE BID—DEPOSIT.

1. Where a cause has been removed from a state court to the federal court, and a motion to remand for want of jurisdiction, has been overruled by the circuit justice then presiding, if the cause subsequently comes before the circuit judge, he will not review the question of jurisdiction. That is considered as settled if there is no appeal.

2. The fact that proof of the publication notice to a defendant in chancery was not made in the state court, prior to the order of removal of the cause to the federal court, does not prevent the latter court having jurisdiction over such defend-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ant, if the publication was actually made according to the state statute.

3. If a defendant voluntarily files an answer, the court acquires jurisdiction over him, whether any replication is put in to the answer or not; and the rights of such defendant, which were in question, are considered adjudicated by a decree in the case.

4. Though the court cannot change the essential parts of a decree after the term at which it was entered, yet it has the power subsequently to amend the decree as to the mode of its execution, the manner of a sale, the time of publication of such sale, and the distribution of the proceeds arising therefrom.

5. By the original decree for the sale of a railroad, it was provided, that the purchasers should pay enough in money, to liquidate certain judgments, taxes, and other claims, if they should be allowed; and, by an amendment to the decree entered at a subsequent term, it was provided that the property should be sold subject to the judgments, taxes, claims, etc., in the hands of the purchasers. *Held*, that the court had the power to make such amendment.

6. In order to set aside a master's sale in foreclosure proceedings on account of the inadequacy of the bid, it is not sufficient to show that the property has not realized its full value; the price must be so inadequate as to show that it is not the result of fair dealing and an honest purchase.

7. Where parties desire to have the sale set aside for inadequacy of the bid, they must show that some person, who is responsible, will make an advance bid.

8. There is no redemption from the sale of railroad property under foreclosure proceedings in the federal courts in this circuit.

9. It is proper practice for the court to require each bidder, at a master's sale of large railroad interests, to make a deposit of $50,000.

10. Where the amount of claims to be allowed against a railroad, depends upon a long course of litigation, it is proper for the court to order the property sold, to be subject to such claims as finally adjudicated.

11. Where the property was bid in by a certain committee acting as agents of the bondholders of the railroad, it is not necessary that it should be shown further, who are their principals.

12. Assignee in bankruptcy, if made a party to a suit, must come in and assert his rights, or he will be barred by decree on default as any other party.

Under a decree of the circuit court for the Southern district of Illinois and the district of Indiana, made in the summer of 1877, and an amendment made to that decree in May, 1878, in both of these courts, the main line of the Indianapolis, Bloomington & Western Railway Company was sold by the master in chancery of each court. The road extends from Indianapolis, in the state of Indiana, to Pekin on the Illinois river, in the state of Illinois. It was sold by a decree of the circuit court of the two districts as one piece of property, by the masters jointly, and was purchased by a committee of the bondholders. The sale took place on the 30th day of October, 1878. [See Case No. 14,258.] After the sale, exceptions were filed by various persons, and also by the company, which were disposed of in the following opinion.

R. E. Williams, for Thomas, trustee.

N. A. Cowdry and G. W. Kretzinger, for Turners' assignee.

J. D. Campbell, for purchasers.

DRUMMOND, Circuit Judge. The first exception is that the court had no jurisdiction of the case, and therefore the decree was void. Under the circumstances, I can scarcely consider this an open question. The cases were originally brought in the state courts of Illinois and Indiana, and were transferred, under the act of congress of 1875 [18 Stat. 470], to the circuit courts of the United States for the Southern district of Illinois and the district of Indiana. A motion was made in the circuit court for the Southern district of Illinois, to remand the case to the state court, on the ground that the federal court had no jurisdiction. The question was argued before Davis and Treat, JJ., fully considered and decided by them; the court holding that it had jurisdiction of the case, under the act of congress of 1875. An order was accordingly made, denying the motion to remand. A like order was made in the district of Indiana. I do not think, therefore, it would be proper for me, whatever my own view of the question of law might be, to change the ruling of the court. If erroneous, the parties have their remedy by an appeal to the supreme court of the United States.

The second exception is, that the issues raised in the original bill were not determined by the court; as there was a chattel mortgage to one Thomas as trustee, and no effort was made by publication, subpœna, or otherwise, to bring him within the jurisdiction of the court. The facts were substantially these: He was made a party to the cross bill, filed by the Farmers' Loan and Trust Co., of New York, the original bill having been filed by the Turners. The law of Illinois, where the proceeding took place, and which is to decide this question is, that a non-resident who is not served with process in a chancery proceeding, can be brought into court on an affidavit and publication. An affidavit was accordingly filed and publication in pursuance of the statute was made in a newspaper. Before the proof of publication was filed in the state court, where the case was pending, it was transferred to the circuit court of the United States, and it is said that the proof of publication was not even made before the order of transfer. I am not prepared to admit that would destroy the legal effect of what had taken place in relation to the affidavit and publication. It seems to me, on the contrary, if the law of the state was observed, a party would be brought into court under the circumstances of the case, although the proof of publication was not actually made. It might be a very doubtful matter, whether or not the fact of the transfer would vitiate the notice. On the contrary, it would seem, in a case properly transferable, all the conditions which the

state law has imposed on the case before the transfer, are to be observed; and if anything should occur to prevent the consummation of the act, which the law of the state contemplated, the transfer would not render it nugatory. However, whether that be so or not, it is clear, from what has appeared since these exceptions were argued, that Thomas, the trustee, was a party to the proceeding in the circuit court of Illinois. He appeared by answer filed. He was, therefore, a party to the litigation and he cannot now object that the court had no jurisdiction over him as trustee of the chattel mortgage.

It is said that a replication was not filed. That would not prevent the court from exercising jurisdiction over him as trustee, or impair the effect of the adjudication of the court. If no replication was filed, that must be considered as waived. Inasmuch as the cross bill of the trust company was filed for the express purpose of determining the respective rights of the parties before the court, some of whom were Thomas, trustee of the chattel mortgage, and the New York company, the trustee representing the bonds for which the mortgages on the main line were given, it must be considered, that when the court adjudicated upon that question and determined that the bondholders, under their mortgages, had a prior and better right, that it also decided the other question although nothing is said in the decree as to the rights of Thomas, the trustee of the chattel mortgage. He claimed a prior right under the chattel mortgage. The other parties claimed a prior right under their real estate mortgages. The court decided that the bondholders, and the mortgages which were given to secure the bonds, had a prior right. That was the main question before the court, which was decided and, of necessity, the rights of Thomas as trustee, were also adjudicated. Therefore, the issues raised by the pleadings in the original bill and cross bill, as to the claim of Thomas for a prior lien, were adjudicated. The second exception must be overruled.

The third exception is, that the court had no authority to amend its decree after the term of the court. The facts were that the original decree was entered on the 18th of July, 1877, and the amendment was made in May, 1878. I admit the rule which denies the power of the court over a decree after the term when it was rendered. It cannot change or alter the essential parts of the decree. But what was the order made by the court in May, 1878? It is termed a further direction for the execution of the decree theretofore entered. The original decree provided that the property should be sold on a certain number of days publication. That was changed by the amendment. The original decree provided for the distribution of the funds arising from the sale in a particular manner. That was changed

by the amendment of May, 1878. But these things did not affect the substance of the decree. Of the right of the court to make that order, I cannot doubt. We will, therefore, pass on to the question about which there seems to be serious controversy.

The thirteenth article of the original decree provided that the sale should be made subject to judgments for right of way, to the taxes which were a lien upon the property, and also, to a certain contract of lease for box freight cars which had been made with the receiver by a man named Adams.

The fourteenth article of the original decree provided,—after declaring that $50,000 should be offered as a deposit, and after the purchase, $50,000 more should be advanced, out of which two sums certain costs should be paid,—that on the delivery of the deed, so much more of the purchase money should be paid into court, in cash, or certificates of receiver's debts, as should be necessary to pay that portion of the receiver's debts made in the operation of the main line of railway, not theretofore directed to be assumed by the purchaser, with such other claims as should be allowed by the court; meaning what were called the back claims, many of which were pending and undecided, and in which, it was understood that under certain circumstances, the decision of the court might be reviewed by the supreme court of the United States.

It will be seen, therefore, that under the original decree, the sale was to be made subject to certain claims, and, that the purchasers had to provide money enough to pay all the claims, which might be allowed by the court, on appeal to the supreme court of the United States. What is the change made in these respects by the amendment? It recites, "that the sale shall be made subject to the judgments for right of way, to the taxes, to the lease made with Adams by the receiver, and also, subject to certain debts which might be due from the receiver, and also, to such claims as might be allowed by the court on appeal to the supreme court of the United States." The only effect was, that whereas, by the original decree, the creditors were required to bid enough to pay these claims and some of the debts of the receiver; in the amendment, it was provided that the sale should be made subject to them, so that they remained as a burden upon the property. That is the only change made which it is material to consider. Was that such a change in the original decree as the court had the power to make? I think it was. It was, so to speak, simply changing the amount of money which was required to be bid for the property. Undoubtedly, it would have been better and much more satisfactory if the court, before it had ordered a sale under the original decree, could have informed the parties, who might purchase the property,

what was the precise amount of liens upon it. But that, in the nature of the case, was impossible unless we had waited, before the property was sold, until the final determination of these various claims by the supreme court of the United States, which might have involved the retention of the property, by the court, for several years. Therefore, it was thought best, by the court and by the parties who are interested in the property, that it should be sold and that the purchaser should pay enough to meet all the claims then definitely ascertained, and that the property should be subject to those adjudicated hereafter. By the original decree and the amendment, the character of the claims, in either event, remains unchanged.

The fourth exception is, that the bid of one million dollars, for which the mortgaged premises were struck off and sold by the masters, was inadequate. And the reason alleged why so small a bid was made, is, because of the limited time the bidding was kept open. The property was offered for sale by the masters at 10 o'clock on the morning of the day specified. The advertisement was read, and the bid received. After waiting considerable time, there being quite a number of persons present, and no other bid being received, the property was struck off to the purchasers at that price. This was a matter, to a very great extent, discretionary with the masters. Undoubtedly, if the masters had any reason to suppose that there would soon be an additional and higher bid, they should have kept the bid open and allowed it to have been received. But, if it was clear, from all the attending circumstances that no additional or higher bid would then be made, I do not see that it was incumbent on them to hold the bid open for an indefinite time—an hour, or even half an hour, or any particular time —in order to allow persons afterwards to come in and bid off the property. The sale was advertised the time required by the court. All parties in interest, and especially those who were parties to the suit, are presumed to have been notified of the time and place of sale, and, if they desired the property to bring its value or near it, they had every opportunity of being present, and prepared to bid such a price as would come up to their ideas of its value.

It is clear from the affidavits, which have been introduced, that there was nothing to indicate that an additional bid would be made for the property. It was, accordingly, struck off to the purchasers. It is true, perhaps, that under some aspects of the case, the bid might be considered a small one. That is to say, it might not be regarded as the value of the property; but we have to take into consideration the circumstances connected with the sale. The incumbrances on the property were to a con-

siderable extent indefinite and unknown to the purchasers, and subject to which they had to make their bid. It was believed that the amounts were very large. A great difference exists among counsel as to the amount which may be allowed. So that it is impossible for the court to disregard this consideration. Then, I think the court ought not to be unmindful of the position of the purchasers themselves. They represent those who have a superior right in equity to this property. They are a committee of the bondholders, most of whom have agreed to the arrangement made under which they have bid this amount for the property; all who are not parties have the option of participating in this arrangement. It is made for the benefit of all. Who has the prior right to the property now? They are not an outside third party who may have purchased it for less than its value, but they are the equitable owners of the property. Besides, it is not because parties may think that property, which has been sold under the order of a court, has not realized its full value, that the court will set the sale aside. The price must be so inadequate as to show that it is not the result of fair dealing and an honest purchase. Now, it cannot be pretended that anything of that kind has occurred here.

Again, the practice of this court has been, where parties come into court and claim that property has been sold at an undervaluation, to require some person of responsibility to make an advance bid such as will authorize the court to order a re-sale. Although this offer has been made in the exceptions, no person has come in, of whom the court can take judicial notice and said that he would give such an advance upon the price as would justify the court in re-selling the property. To be sure, it was stated that a certain capitalist had offered to give $500,-000 more. I know nothing of him. I cannot take the statements of counsel made in this general way. One of the counsel, himself, says he would make an advance of $50,000 on the bid that has been offered. I know nothing about his responsibility. I do not know whether he can make good his statement to the court or not. I, therefore, would not be justified in setting aside the sale on that ground and hold them as the responsible parties who will make such an advance upon the bid as to warrant the court in ordering a re-sale. The fourth exception will therefore be overruled.

The fifth exception is, that after a decision made in this court that the right of redemption did not apply to railroads, there was not sufficient opportunity for the parties in interest to make arrangements to bid in the property at the sale. If that decision was correct, of course the parties were presumed to know the law. In point of fact, the decision in the case of Brine v.

Hartford Fire Ins. Co., 96 U. S. 627, was contrary to the practice of the circuit court of the United States for the district of Illinois for many years. A practice which had been accepted and acquiesced in by the bar, in all cases of foreclosure. After this practice had thus continued, an exception was taken to it, and the supreme court of the United States held, in the case cited, that in cases of foreclosures of mortgages on real estate, the law of Illinois was a rule of property in the circuit court of the United States, and as that law gave the right of redemption, the sale must be made in the circuit court of the United States, subject to redemption. Of course the question immediately came up, whether this law applied to railroads, and with a view of taking the opinion of the court upon that question, it was brought before the circuit court of this circuit. It was recently argued, at Chicago, before Judges Harlan, Gresham and Blodgett, and the court held that, the rule in the case of Brine v. Hartford Fire Ins. Co., supra, did not apply to the sale of railroads under decrees of the circuit court of the United States. This being the law of this circuit till changed by the supreme court of the United States, I cannot admit the claim set up in the exception, and therefore the fifth exception will be overruled.

The sixth exception is, that the terms of sale were unusually onerous; as it was required that the person making the bid should deposit $50,000 with the masters, and, if the bid was accepted, the successful bidder should forthwith pay to the masters an additional sum of $50,000, making, in all, $100,000. And, it is said, the premises would have sold for more if these conditions had not been annexed to the sale. As these conditions were imposed by the court, it is rather an attack upon the judgment of the court. It must be remembered that this was a very large property. It was a railroad over 200 miles in length with its rolling stock, franchises and interests of all kinds. There were very large claims which had to be met immediately, including costs and expenses. And it seemed as though such a sum was indispensably necessary in order to meet these claims. It must be recollected, too, that the litigation had been protracted for a number of years; that parties had been performing services without any compensation year after year. lawyers, masters, clerks, etc. And after so long a time and after the performance of so much service, it was thought some provision must be made for its payment, and accordingly $100,000 was not thought inadequate. The language of the original decree was, "that the masters in chancery are hereby authorized and directed to require a deposit to be made by each and every bidder at such sale of $50,000, as security." That was to prevent, what are termed, "straw bids" and prevent delays. It sometimes happens that men who are dissatisfied with the decrees and orders of the court and who claim an interest in the property bid for the purpose of delay, and, when called upon to make their bids good, are unable to do so. The court wanted to prevent anything of that kind and in order to require responsible parties to bid, it was decreed that each bidder must show his responsibility by depositing the sum of $50,000, and then after this deposit was made, $50,000 additional was required to be deposited by the successful bidder by another article in the original decree, for the same reason. I cannot think that these conditions were onerous or unusual. The sixth exception will, therefore, be overruled.

The seventh exception is, that the masters were unable to inform the purchasers of the amount of claims or debts subject to which the property was sold; and that restrained bidders. The main fact is undoubtedly true. It was impossible for the masters to state precisely the amount of claims upon this property; because, that amount may depend in a very great degree upon the decision of the supreme court of the United States. And to obtain that decision, it would have been necessary to suspend the sale for several years. That was something, therefore, which grew out of the necessity of the case and which could not be avoided.

The eighth exception is substantially like the seventh. They, therefore, will both be overruled.

The ninth exception is, a pledge made by Thomas, the trustee of the chattel mortgage, that if the court will again offer the premises for sale, they shall sell for more than a million dollars, and the costs of making the sale. I have already spoken of that and have said that there has been no offer made in such a way that the court can take judicial notice of it and order a re-sale of the property. This promise or pledge has not been made good, and the ninth exception will be overruled.

The tenth exception is simply a reference by Thomas to the orders and decrees of the court which need not be further mentioned.

The eleventh exception, which has been added since the original exceptions were filed, is, that there is a certain committee acting as agents of the bondholders of the railway company; that there was no provision on the subject in the decree under which the sale was made; that the members of the committee are the parties who bid at the sale, and that the report of the masters does not show who were the principals for whom this property was purchased, and does not state what interest each of the parties interested in the purchase has. I do not know why that is necessary. These purchasers come forward and claim they are a committee of the bondholders. The court may take judicial notice of the fact that they represent the owners of the property. All that the court can require of them is

that they shall comply with its orders. They have, so far, complied and shown their ability so to do. Indeed, perhaps in most of the sales which take place, certainly in many, under the decree of the court, the parties who are the nominal purchasers, are often agents representing others. And they are not disclosed until the deed is demanded of the court and, sometimes, not even then. The eleventh exception will be overruled.

I think this disposes of all the exceptions which have been made except what relates to the bankruptcy of the Turners. The original bill was filed by them. Thereupon, a cross bill was filed by the Farmers' Loan and Trust Company which, as the court found, was the main actor and rightful one, in the litigation as having a prior lien with authority to control it. The court sustained the prior equities of the company as the representative of the bondholders.

After the first cross bill was filed by the Farmers' Loan and Trust Company, the Turners went into bankruptcy and the assignee in bankruptcy was made a party upon the record. Undoubtedly, by the bankruptcy of the Turners, they ceased to have any authority over their property or any litigation then pending. But they had been the actors, originally, in the litigation, and a cross bill had been filed against them by the Farmers' Loan and Trust Company. Under that state of facts, there was an informality or irregularity in one respect in the decree. A default was taken against the Turners as though they were legally in esse interested in the litigation, contrary to the fact. But, is the assignee to be heard now and has he the right to say that the decree of the court did not bind him? I think not. If the assignee chose to lay by and do nothing, although made a party, then all that can be said is, that it is a mere irregularity in entering the decree; appearing there in court, made a party to the proceeding in court, it was his right to take the necessary steps to protect the interests of the bankrupts. If he did not choose to do so, certainly it would be unjust that the rights of others should be destroyed or even impaired because of his neglect. While, therefore, there may be an informality in the decree, still I cannot see that it affects the rights of the Farmers' Loan and Trust Company, the general validity of the sale, or the decree, and, therefore, that objection will be overruled like the others.

In disposing of the various objections that have been taken to this sale, it may be proper to add, in conclusion, that both Thomas and the assignee are parties to the decree, or they are not. If they are, they are necessarily bound by it. If they are not, their rights can be protected by a proper proceeding in a proper court.

For these reasons, the sale must be confirmed.