## BOUND v. SOUTH CAROLINA RY. CO. et al.

(Circuit Court, D. South Carolina. April 3, 1893.)

1. FORECLOSURE OF MORTGAGE — FINAL DECREE — POWER TO POSTPONE SALE.
   A court of equity, pending an appeal without supersedeas, from a final decree in a foreclosure suit, settling the priority of liens, and fixing a day for sale, has power to postpone the sale, if a sale on the day fixed would be oppressive or unjust.

2. SAME — APPEAL — POSTPONEMENT.
   Such a postponement should be made in a suit to foreclose a railroad mortgage, when an appeal has been taken from the decree of sale, the

result of which might be disastrous to the purchaser, or where the sale, if incapable of being rescinded, would render nugatory a decision in favor of appellants.

In Equity. Bill by Frederick W. Bound against the South Carolina Railway Company and others to foreclose a mortgage. Motion to postpone sale granted. For the history of this litigation, see prior reports: 46 Fed. Rep. 315; 47 Fed. Rep. 30; 50 Fed. Rep. 312 and 853; 51 Fed. Rep. 58.

Saml. Lord, W. H. Peckham, E. E. Anderson, Mitchell & Smith, and G. W. McCormack, for the motion.

Smythe & Lee, T. W. Bacot, and Asher D. Cohen, opposed.

SIMONTON, District Judge. On the 23d day of February, 1893, a motion was made in this court to postpone the sale of the South Carolina Railway Company, ordered for 11th April, 1893. The cause had come on to a hearing on 2d day of May, 1892, and an opinion was filed on 29th day of June, 1892. See 50 Fed. Rep. 853. That opinion was formulated into a final decree on 23d day of November, 1892. The chief matter of contest was as to the mode of sale. There were a number of liens upon the property, differing in priority. The judgment obtained by Henry Thomas Coghlan—a decree for sale—was the first lien; then, some outstanding bonds issued under the first mortgage, of 1868; the consolidated first mortgage bonds, issued in 1881; then, consolidated second mortgage bonds, and the lien of income bonds. The bill had been filed in behalf of second consolidated mortgage bondholders, praying foreclosure of the second mortgage. In the proceeding, cross bills were filed by Coghlan, and the trustees of the first mortgage of 1868, and by the trustees of the first consolidated mortgage, each of these praying foreclosure and sale. To this end the trustees of the first consolidated mortgage had exercised a power conferred on them in their mortgage, and had declared all the first mortgage bonds past due. So, also, had the trustees of the second mortgage. At the hearing a large number of first consolidated first mortgage bondholders earnestly insisted that the foreclosure should be of the second mortgage, and that the sale, when ordered, should be subject to all liens preceding the second mortgage. All parties concurred in the necessity for a sale. The only question was, should the sale be free of all liens, or subject, as stated, to the liens anterior to the second mortgage? No contest or issue of any kind was made over the time of the sale. In its final order this court decided this contest, and ordered the sale to be made free of all liens. The day selected for the sale was 11th April, 1893. The final decree having been filed, appeals therefrom were taken by the representative of these holders of the first consolidated mortgage bonds, who opposed the sale free of all liens, and also by the representatives of the complainant, in behalf of second mortgage bondholders. These appeals were not taken within 60 days from the filing of the final order, and could not operate as a supersedeas. Pending these appeals a motion was made in this court on 23d February, 1893, looking to the postponement of the sale from the 11th April until such time as the

decision of the circuit court of appeals upon the errors assigned could be had. Inasmuch as the appeals had taken the cause out of this court, the motion was refused, because of the conviction in the mind of the court that it could not interfere with the final decree. Thereupon the motion was renewed in the circuit court of appeals, and that court, being of opinion that the circuit court was competent to act in the matter, refused to interfere, especially as no supersedeas had been obtained. The motion was again made in this court. It is based upon the existence of the pending appeals, and the consequent chilling of the bidding because of the uncertainty attending the validity of the sale, and upon the depressed condition of railroad property in this state, because of adverse legislation. This motion is favored by the trustees of the first consolidated mortgage; by many, perhaps a majority, of the bondholders under the first consolidated mortgage; by a part of the income bondholders and stockholders. It is resisted by the trustees of the mortgage of 1868; by several first consolidated mortgage bondholders; by the trustees, and many bondholders of the second mortgage by income bondholders and stockholders.

The first question to be decided is as to the power of this court at this stage of the case—the appeal pending—to grant the motion. It is manifest that, if this postponement is to operate as a supersedeas, it could not be granted. The supersedeas is a right secured by statute, and of imperative obligation on the court and its officers. If the provisions of the statute are complied with, the right exists. If these are not complied with, it cannot exist. Without such compliance, no court can confer it. French v. Shoemaker, 12 Wall. 100; Kitchen v. Randolph, 93 U. S. 92; Sage v. Railroad Co., Id. 416. Nor can the motion be made if it is a material amendment to, or alteration of, the final order. The term at which the final order was made has ended. Muller v. Ehlers, 91 U. S. 250; Bronson v. Schulten, 104 U. S. 415.

What, then, was the final decree in this case? It fixed the date, amount, and priority of each of the liens, and ordered a sale free of all liens whatsoever; transferring this lien to the fund, and providing for, and ordering, their payment out of this fund, so far as it will go. This was the response made by the court to the issues presented to and argued before it. Over this conclusion the circuit court has now no control whatever. It cannot modify, annul, or alter it. These issues having been definitely settled, a day was fixed upon which the property should be sold, in order that the principles of the decree should be carried into action; that is to say, the day on which execution and sale should take place. Can the court make any postponement or change in this? In Monkhouse v. Corporation, 17 Ves. 380, a decree was obtained at the rolls by a mortgagee, in the usual form. A motion was made to suspend the execution of the decree until six months after an appeal could be heard. Lord Eldon heard the motion, and granted it on terms, saying:

"This decree must therefore be taken to be right, to the extent of letting execution proceed on it, unless the court sees that if it should turn out to be wrong the party cannot be set right again."

In 2 Daniell, Ch. Pr. 1018, the doctrine is recognized that in decrees of foreclosure the court can, on application, enlarge the time for the payment of the money, and this without imposing terms. Of course, this means postponing the sale. And he cites instances in which, on terms imposed, the time was enlarged for six months, and again for three months; and in one case (Edwards v. Cunliffe, 1 Mad. 287, 289) a fourth order was made for enlarging the time though the third was directed to be peremptory. In Spann v. Spann, 2 Hill. Ch. Pr. 122, the court say:

"The order of 21st February, 1884, was made on the application of the plaintiffs themselves, and is in its nature final, and not interlocutory. It awards execution against the parties, and, if erroneous, was the subject of appeal. I am therefore clearly of opinion that the chancellor had no authority to set it aside on account of any supposed error in point of fact or law. But it is equally clear that the courts, both of law and equity, or a judge or chancellor sitting at chambers, have the power, and duly exercise it, of suspending the execution of even final process on account of subsequent matter which would render the execution of it oppressive or iniquitous. And I would say, in general, that, whenever subsequent occurrences would render the execution of a judgment or order of the court at law or in equity oppressive or unjust, the execution of it ought to be restrained, and, if this should happen in vacation, it can only be done by an order at chambers."

It would seem, therefore, that notwithstanding that the court has no power whatever, after final decree, to amend, modify, or alter the principles of the decree, it retains and possesses the power of controlling the time of its execution.

Is there any reason why there should be a change made in the time of executing this decree? The final decree orders the sale free of all liens, and transfers these liens to the fund. The appeal directly antagonizes this. If the sale took place before the appeal is heard and decided, and the purchaser get a good title,—in other words, if the sale cannot be rescinded,—the appeal will be, and is, absolutely nugatory. And if the circuit court could exercise a discretion, and suspend the sale, and refuses to do so, then by the action of the circuit court the decision of the appeal court is either anticipated, or rendered of no value whatever. If, on the other hand, a decision of the appeal court, reversing the decree of the circuit court, will have the effect of annulling and setting aside the sale, we have consequences almost as disastrous to the purchaser, who will advance his money, and assume possession, relying upon the decree and action of the circuit court. The learned counsel who opened, in opposition to this motion, in his exhaustive argument referred to a line of cases showing that the sale, notwithstanding the appeal, will bind all parties to this cause. Without deciding—indeed, without entering into—this question, and accepting the doctrine as stated, this case comes within the exception stated by Lord Eldon, and quoted above:

"This decree must therefore be taken to be right, to the extent of letting execution proceed upon it, unless the court sees that if it should turn out to be wrong the party cannot be set right again." Monkhouse v. Corporation, 17 Ves. 382.

If the sale take place, and is final, the lien of the first consolidated mortgage bondholders will be gone, forever, and their appeal and

contention rendered nugatory and void. They would lose their right beyond possibility of remedy or compensation. It may be said that a supersedeas bond would have prevented this. But filing a supersedeas bond is optional, and not obligatory. The right of appeal is absolute. The right of review in the appellate court is equally absolute. It cannot and should not be defeated by the action or nonaction of the lower court. This consideration alone, and the uncertainty upon this point, must effectually deter bidders, except of the most reckless character; and the exposure of the rights of parties to this suit to possible destruction would, in the language of Johnson, J., quoted supra, be oppressive or iniquitous. The sale will be postponed from 11th April next to the 12th day of December next, 1893.