THE UNION TRUST COMPANY OF INDIANAPOLIS *v.* CURTIS, RECEIVER, ET AL.

[No. 22,426. Filed June 12, 1914.]

1. RECEIVERS.—*Sales.*—*Decree.*—*Suit to Modify and Enforce Decree.*—Where, notwithstanding persistent efforts were made under a decree ordering the property of an insolvent railroad corporation to be sold for the payment of the receiver's indebtedness and other debts, fixing the minimum selling price, and providing that the property should be sold subject to a contract relative to the maintenance of the road and shops, no sale was had because no one was willing to bid the minimum price, or to purchase the road subject to the conditions, a creditor could maintain a suit in equity to remove the obstructions to the execution of the decree and procure its enforcement. pp. 67, 68, 69.

2. ACTION.—*Equity.*—*Constitutional and Statutory Provisions.*— Equity jurisprudence in its fullness is in force except as curtailed by constitutional and statutory provisions. p. 68.

3. APPEAL.—*Decisions Reviewable.*—*Final Judgment.*—The judgment rendered in a creditor's suit to remove obstructions to the execution of a decree ordering the sale of an insolvent's property for the payment of debts, is a final judgment within the

meaning of §671 Burns 1914, §632 R. S. 1881, which grants an appeal from all final judgments. p. 69.

4. RECEIVERS.—*Sale of Property.—Terms of Sale.*—It is within the sound discretion of the court, on decreeing the sale of property in the hands of a receiver, to accompany the decree with a direction that the property should not be sold for less than a specified price. p. 70.

5. RECEIVERS.—*Sale of Property.—Terms of Sale.*—Where, notwithstanding repeated efforts to sell the property of an insolvent railroad corporation under a decree specifying a minimum selling price and providing that the sale should be subject to a contract relative to the maintenance of the road and shops, no sale was had because no one would bid the required amount or agree to purchase subject to the conditions, and in the meantime the receiver was operating the road at much loss and in a manner not conforming to the best interests of any one concerned, the court had the power on its own initiative, or on the application of any creditor, to remove the obstructions to the execution of the decree, and its denial of such relief in a suit instituted by a creditor for that purpose was error. pp. 70, 71.

6. EQUITY.—*Decree.—Amendment or Change.*—While the essential judicatory part of a decree may not be changed by a court after the term when it was rendered, those parts which are merely directory as to the mode of its execution may be changed at any term. p. 70.

7. RECEIVERS.—*Sale of Property.—Decree.*—Where neither the statute under which a railroad company was incorporated, nor a contract relative to the maintenance of its road and shops, entered into by it with a township in consideration of a subsidy, confined the company to the use of steam as a motive power, the court on decreeing a sale of the road by the receiver was not warranted in ordering that the sale be made upon the condition that the road should be operated as a steam road. p. 72.

8. RECEIVERS.—*Sale of Property.—Terms of Sale.—Railroads.*—The receiver of a railroad corporation was not bound by a contract which the corporation had entered into in consideration of a township subsidy, agreeing to maintain its shops and terminals at a certain place and to maintain its road between certain points, and it was improper for the court, on decreeing a sale, to order that it be made subject to such contract, since the operation of a railroad at a loss can not be compelled, either in the hands of the company, or of a receiver, or of a purchaser at a receiver's sale. p. 72.

9. RECEIVERS.—*Sale of Property.—Adjudicating Priorities of Creditors.*—On appeal from the judgment rendered in a suit by the holder of receiver's certificates to remove obstructions to the sale

of an insolvent railroad corporation's property by modifying the terms of sale contained in the decree, and seeking an adjudication of the priorities of certain creditors, the court's refusal to adjudicate such priorities, and the postponement of such adjudication, will not be reviewed, since it can be neither said that the trial court had no right to postpone such consideration, nor assumed that the settlement of priorities, when ultimately made, will not be correct. p. 74.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by The Union Trust Company of Indianapolis against John C. Curtis, Receiver of the Cincinnati, Bluffton and Chicago Railroad Company, and others. From a judgment against it, the plaintiff appeals. *Reversed.*

*Charles N. Thompson* and *Addison C. Harris,* for appellant.

*Lesh & Lesh* and *Watkins & Butler,* for appellees.

Cox, C. J.—The Cincinnati, Bluffton and Chicago Railroad lies between Huntington and Portland, and is a local line about fifty miles in length. When constructed, several miles of track eastward from Huntington were laid upon the right of way of the Erie railroad. On March 13, 1908, a general creditor brought his action against the company, and among other things, charged that it was insolvent, and prayed for the immediate appointment of a receiver. On the same day John C. Curtis was appointed receiver, took possession, and has been operating the road at all times since. On May 22, 1908, the receiver filed a petition showing that the road was indebted largely on construction accounts which were or could be secured by mechanics' liens; that large sums were due for labor performed within six months prior to his appointment and there were judgments of foreclosure of mechanics' liens and material men about to be enforced; that there were many right of way claims unpaid; that he needed money to pay the current payroll, to purchase a locomotive and a passenger coach, etc., and to pay them, asked the court to direct an issue and sale of re-

ceiver's certificates in the sum of $95,000, and that they be made a first lien on the *corpus* of the property. Such proceedings were had that later the court ordered the issue and sale of certificates to the amount named, and by proper orders made the same a prior lien over an existing mortgage, and superior in priority and right to any certificates that might be issued in the future, or debts created thereafter. The certificates to bear interest at six per cent semi-annually and the principal due one year after the date of issue.

William A. Guthrie purchased the issue and the same is now held by the Union Trust Company. Nothing has ever been paid thereon except the first semiannual instalment of interest. The trustees and bondholders under the mortgage consented to the issue as made. Shortly before the appointment of the receiver, the railroad company, to obtain a subsidy from Huntington Township, made an agreement with it through the board of county commissioners, to the effect that in consideration of the payment of the subsidy, the railroad would permanently maintain its line of railroad from the city of Portland to the city of Huntington; that it would permanently maintain its shops and terminals at Huntington; and that its freight and passenger rates should not exceed those charged by other railroads in Indiana.

In the year 1910, the Union Trust Company brought its action in the Huntington Circuit Court against the railroad company, the receiver, trustees, bondholders, and all persons claiming to have any lien upon, or interest in, or claim against, the railroad or the receiver, for the enforcement of its lien under the certificates and the sale of the property; and such proceedings were had that a special finding was made and a final decree was entered on December 5, 1910, determining and marshalling the amounts of each and every lien and charge, and adjudging that the lien held by the Union Trust Company, after taxes and certain named claims, was the first and prior lien on the *corpus* of the property, directing the sale, and ordering the proceeds to be dis-

tributed among the creditors, who were divided into six classes, in the order of their several priorities, numbered from A to F, inclusive. The first class (A) embraced taxes and certain claims unpaid. The second class (B) included the sums due for labor, material and supplies furnished to the receiver and his attorneys. The third class (C) embraced only the claim of the Union Trust Company. The subsequent classes embraced the mortgage bonds outstanding as held by many persons, unsecured debts existing at the time of the receivership, and so on. The decree directed the receiver to advertise and to sell the road as an entirety on March 15, 1911, and among the directions given, concerning the sale, was one to the effect that the receiver should receive no bids for a less sum than $800,000. The receiver was further directed that if no sale was made on the day fixed, then he should adjourn the sale from time to time and continue to reoffer the property without further advertisement. This has been done, but no bidder has ever been found to purchase the property at the "upset price", and the receiver and the court have at all times published and declared that no bid would be received for a less price. A further condition of sale named in the decree was that the sale should be subject to the terms and the conditions of the contract of the company with Huntington Township relating to the maintenance of its railroad and shops. The judge and receiver have both openly declared that any purchaser would be required to take the property under an obligation to operate the same with steam power. Some persons inspected the property with a purpose in view to take it over and to incorporate it into an electric railway system, but on learning of the "upset price" and also of the requirement as to the use of power, withdrew from the negotiation.

The receiver's indebtedness, including the certificates and unpaid taxes, aggregates $287,284.20. Since the decree of sale of date December 5, 1910, the receiver has from time

to time borrowed money and purchased material and supplies and the like, and under the direction of the court and without notice to or knowledge of the Union Trust Company, issued other receiver's certificates under orders giving them priority over the lien of the Union Trust Company. The subsequent certificates, called sometimes receiver's notes, outstanding exceed in all $65,000.

The equipment as acquired both before and since the receivership, and now on hands is worn out. During the year 1912, the State railway commission condemned the passenger cars as unfit for use. Thereupon the receiver bought of the Barber Car Company and put in use three gasoline motor passenger cars which are operated something like a trolley line. The remainder of the equipment consists of twelve second-hand freight cars, some old gravel cars, an old steam shovel, and four old locomotives which have been in use for about twenty years. The track is laid mostly with rails of 60 pounds to the yard. During the year 1912, a controversy arose between the receiver and the Erie railroad which resulted in the latter's throwing the track off of its right of way, and the receiver relaid it for the distance along the Erie property and is using it in an uncompleted condition. The ties are old, many unfit for use, and the whole property is out of repair and going to waste. And so the trust dragged along at a great and continuing loss. With this situation of affairs, the Union Trust Company began its action on December 5, 1912, against the receiver and the holders of the subsequent receiver's certificates for the purpose of having it adjudicated that such certificates were inferior to the lien of the Union Trust Company; to remove the condition of sale requiring the purchaser to comply with the contract with the township and to maintain the shops and to operate the road with steam motive power; and to set aside the direction touching the "upset price"; and to require the property to be sold and the receivership to be wound up and the trust closed. In short the action was to

set aside and remove the obstructions preventing a sale of the property and to enforce the decree of sale and to wind up the receivership, which is being carried on at a great loss, and close the trust with due speed. No demurrers or other pleadings were filed by any of the defendants save only an answer of the receiver as to his operations and indebtedness; and answers by the certificate holders seeking to maintain their several priorities; and some answers by and on behalf of Huntington Township seeking to maintain that the road must always be operated by steam. A motion filed by the Union Trust Company at the proper time to change the venue both from the court and the county was overruled. A trial was had beginning on April 23, 1913, during which several stipulations were made, among which was one that the passenger cars are of no value and that the receiver's indebtedness created since the decree and unpaid is shown by his answer, to be $97,319.27, and this sum does not include any interest on the various claims falling under classes A, B, C and D, on which no interest has been paid.

At the conclusion of the evidence the court rendered a judgment against the appellant that it was not entitled to the relief prayed for; that the "upset price" of $800,000 should not be removed or reduced; that the direction that the receiver should sell on condition that the road should be maintained and operated in accordance with the subsidy contract with steam motive power by any purchaser should not be eliminated nor modified; and that the question of the priority of the receiver's obligations should be deferred to the time of making order for distribution. The correctness of each of these three conclusions of the court is assailed by appellant in this appeal.

We are met at the outset by a contention on the part of appellees that appellant's action was in the nature of a motion to modify or change the decree of sale and that 1. the denial of it bears such a relation to that decree that it must be deemed an appeal therefrom, and

that the time for taking such an appeal has long ago expired except by virtue of the provisions of subd. 21, §1 of the act approved March 10, 1913, Acts 1913 p. 454, and, it is claimed, this clause of the act of 1913, *supra,* was unconstitutional and void and fell with the rest of the act by force of the decision in *Curless* v. *Watson* (1913), 180 Ind. 86, 102 N. E. 497, 502, 504. And the further claim is made that if this provision is to be deemed to have survived the decision in that case, it must now nevertheless be declared void because not expressed in the title to the act of 1913, *supra.* It is not essential to the determination of the appeal that these contentions of appellees be given consideration further than to determine that appellant's action is in the nature of a suit in equity to remove the obstructions to the execution of the decree in its favor and to procure its enforcement and this we do. That this was the nature of the action is palpable from the complaint and from the course of the proceedings in the trial court to the judgment rendered by it. It is to be remembered that equity jurisprudence in its fullness is in force in this State except as curtailed by constitutional and statutory provisions. §236 Burns 1914, §236 R. S. 1881; *Wild* v. *Noblesville Bldg., etc., Institution* (1899), 153 Ind. 5, 8, 53 N. E. 944. Such an action, while not common, is well recognized and has been resorted to in this State. *Linton* v. *Potts* (1840), 5 Blackf. 396; *Princeton Coal, etc., Co.* v. *Gilchrist* (1912), 51 Ind. App. 216, 99 N. E. 426 and authorities there cited. See, also, *Root* v. *Woolworth* (1893), 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123; *Shield* v. *Thomas* (1855), 18 How. 253, 262, 15 L. Ed. 368; *Turner* v. *Indiana, etc., R. Co.* (1878), 8 Biss. 380, Fed. Cas. 14, 259; *Bound* v. *South Carolina R. Co.* (1893), 55 Fed. 186, 189; *Shainwald* v. *Lewis* (1895), 69 Fed. 487, 493; *Royal Trust Co.* v. *Washburn, etc., R. Co.* (1902), 113 Fed. 531; *Spann* v. *Spann* (1835), 2 Hill Eq. (S. C.) 122; *Wright* v. *Bowden* (1853), 54 N. C. 15, 59 Am. Dec. 600; *Owings* v. *Rhodes* (1886), 65 Md. 408, 9 Atl. 903;

*Farmers Loan Co.* v. *Oregon, etc., R. Co.* (1895), 28 Or. 44, 40 Pac. 1089; *First Nat. Bank* v. *Kingman & Co.* (1901), 62 Kan. 571, 64 Pac. 65; *South Jersey Realty Co.* v. *Staley* (1908), 75 N. J. Eq. 63, 75 Atl. 934; 3 Ency. Pl. and Pr. 601; 2 Beach, Mod. Eq. Pr. §903; 2 Daniells, Ch. Pr. (7th ed.) §17; 16 Cyc. 500. The judgment in such a suit must be deemed a final judgment within the meaning of §671 Burns 1914, §632 R. S. 1881, which grants appeals from all final judgments. *Walb* v. *Eshelman* (1911), 176 Ind. 253, 94 N. E. 566. It is difficult to see how appellant otherwise could have remedy for the condition before it, which, if permitted to continue indefinitely, might so waste and dissipate the property upon which it must rely for repayment of the money advanced by it as to produce partial or even entire loss. When the decree of 1910 was entered by the court, appellant was not bound to foresee that the conditions of sale would obstruct the execution of the decree and entail a long delay in carrying it out and the continued operation of the road at a constantly increasing loss and of preferred indebtedness. As that decree so far as it ordered the sale of the property to satisfy appellant's lien was a decree for appellant an appeal by it therefrom if permissible, would, perhaps, have been unavailing. It is axiomatic that "where there is a right there is a remedy". "Where a decree has remained unexecuted until it is necessary to have an adjudication to settle rights which have become embarrassed by subsequent events, a bill will lie to ascertain and settle such rights and enforce the decree, and a bill will also lie to carry out the decree according to its object, where further orders are necessary in order to effectuate it and give it complete force". 16 Cyc. 500 and cases there cited. In *Linton* v. *Potts, supra,* it was said: "Bills to carry a former decree into execution are sometimes resorted to, though they are not very common, nor do the principles governing them seem to be distinctly defined. Elementary writers of good

authority, however, lay down the law to be, that such bills will be sustained, when, from the neglect of the parties, or some other cause, subsequent events have intervened, which render the further aid of the court necessary''.

The facts in the record before us lead only to the conclusion that two things obstruct the carrying of the decree of sale into execution. And these are the conditions imposed by the trial court that the property should not be sold for less than the sum of $800,000; and that the purchaser should maintain the shops at Huntington and maintain and operate the road from Huntington to Portland as a steam road. While perhaps the value of the railroad in the market could not be made an issuable fact and adjudicated in the suit of appellant to foreclose the lien, yet it was doubtless within the sound and informed discretion of the trial court in the first instance, when the decree of sale was entered, to accompany it with a direction that the property should be sold for a sum not less than a fixed minimum or ''upset price''. *In re Newark Savings Inst.* (1887), 9 Atl. 375; 34 Cyc. 319, 320. But when persistent efforts were made over a long period of time to sell at the price fixed and these efforts proved entirely futile, the exercise of a sound discretion would, patently, under the circumstance of persistently increasing losses, demand a reduction or even an entire elimination of the upset price, from the direction for the carrying the decree of sale into effect. This, of course, was within the power and duty of the court either on its own initiative, or at the instance of appellant or others in like situation. While the essential judicatory part of a decree may not be changed by a court after the term when it was rendered, those parts which are directory as to the mode of its execution may be, and of such a nature is the amount of money required to be, bid for the property. *Turner* v. *Indiana, etc., R. Co., supra; Farmers Loan Co.* v. *Oregon, etc., R. Co., supra; Royal Trust Co.* v. *Washburn, etc., R. Co.,*

*supra.* In the case last cited it was said: ''A decree of foreclosure is, in a sense, a final decree, adjudging the rights of the parties as between themselves, but a decree of foreclosure is something more than that. It is not only a decree adjudging those rights, but it is also a sort of equitable execution, providing the manner in which the decree shall be enforced, and for the assertion of the rights declared; and the provisions of a foreclosure decree with respect to the manner and the terms of the sale are part of the terms of the execution of the decree, and not of the decree, so far as adjudging the rights of the parties. * * * It is always within the province of the court of equity at any term of the court to modify the terms of the decree so as justly and equitably to enforce its judgment and render to the parties that to which they are entitled.'' The court's continued operation of the road through its receiver by reason of its failure to execute the decree of sale, not only withheld from the appellant, as well as other creditors, payment of their dues but also constantly and increasingly lessened the value of the property on which they must rely, and moreover benefited no one to serve whose interest the receivership was instituted. Doubtless to the consideration which justifies a court in ordering a receiver to continue a business in its hands that it may be sold as a going business and so bring a better price, is, in the case of a railway, added that of keeping a public utility open for the benefit of the public. 33 Cyc. 627; 1 Elliott, Railroads (2d ed.) §574. But, as stated, in the instance before us the continued operation of the railroad by the receiver, which the delay in the execution of the sale occasioned, it is clear, served beneficially no attached interest, private or public, but put them all in peril and the sale should have been made at the earliest time and on the best terms obtainable. A receiver for a railroad is appointed to protect and preserve its property and the rights of those interested in it and not to waste or lose it, and when the continued operation results in con-

tinued loss the sale should, ordinarily, be speedily made. The court erred in refusing to eliminate the "upset price".

Now as to the action of the court in refusing to free the decree from the condition that the shops and road should be maintained and the road operated as a steam road.

7. The trial court doubtless acted in good faith for the protection of the taxpayers of Huntington Township who had paid the subsidy. But ample reasons exist

8. why the court should not have attached such a condition to the sale in the first instance, and to those reasons another is added which required the court, in the administration of the trust, to eliminate the condition at this suit of appellant. A reason why such a condition should not have been placed upon the sale is found in the fact that the charter of the road, the act under which it was incorporated, did not confine it to the use of steam motive power. Subd. 5, §5195 Burns 1914, Acts 1911 p. 136; see also 33 Cyc. 380, and cases there cited. Nor did the contract with Huntington Township by its terms confine the railroad to the use of steam motive power. It did bind the company, in consideration of the subsidy, permanently to maintain "its shops and terminals" at Huntington and "its line of railroad" from Huntington to Portland and that its rates of transporation of freight and passengers should not exceed those of other roads in the State. But whatever the construction of the contract, it bound neither the court nor the receiver in administering the property of the insolvent concern for the benefit of the creditors. The rule is that the receiver is not bound by a contract made by the company before his appointment, which does not constitute a lien on the property, and he can not be compelled to perform it. The contract is that of the company and for a breach of it the company and not the receiver is liable. 33 Cyc. 623; 34 Cyc. 258-267 and cases there cited; 1 Elliott, Railroads (2d ed.) §579 and cases there cited. In *Brown* v. *Warner*, (1890), 78 Tex. 543, 14 S. W. 1032, 22 Am. St. 67, 11 L. R.

A. 394, it was said: "When the appellants were appointed receivers, and placed in charge of the railway, there was a contract existing between the railway company and the plaintiff for the maintenance of a switch * * *. That was purely a personal contract. The duty of the receivers was to hold and operate the railroad, and they were no more bound to carry out the company's contract to maintain the switch than they were to discharge its obligations to pay money. When in the management of the road they deemed it proper to remove the switch and did remove it, the contract of the company was broken and it was liable in damages for its breach. * * * If appellee were unable to recover damages of the company for its breach of the contract, by reason of its insolvency, it is a misfortune he has suffered doubtless with numerous simple contract creditors." While the cases on the question are not numerous it has been held that in circumstances similar to those in which this railroad has fallen, the owner can not be compelled to operate it at an actual loss. The duty of a railroad company to operate its road being deemed to be measured merely to meet the public wants and exigencies; and if there is not sufficient traffic over a particular line of road to pay for the expense of running trains, this is sufficient evidence that the public does not require it to be kept in operation. In such case the company may cease operating the road, unless contrary to the express terms of its charter. *Royal Trust Co.* v. *Washburn, etc., R. Co., supra; Jack* v. *Williams* (1902), 113 Fed. 823; *State, ex rel.* v. *Jack* (1906), 145 Fed. 281, 76 C. C. A. 165 and cases there cited; *Ohio, etc., R. Co.* v. *People, ex rel.* (1887), 120 Ill. 200, 11 N. E. 347; *State, ex rel.* v. *Dodge City, etc., R. Co.* (1894), 53 Kan. 329, 36 Pac. 755, 24 L. R. A. 564; *Commonwealth* v. *Fitchburg R. Co.* (1858), 78 Mass. 180; *New York Trust Co.* v. *Portsmouth, etc., R. Co.* (1911), 192 Fed. 728; *Northern Pac. R. Co.* v. *Territory, ex rel.* (1892), 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092; 33 Cyc. 635, *et seq.;* 1 Elliott,

Railroads (2d ed.) §578. This rule, of course, for reasons that are obvious, must be applicable to roads in the hands of receivers, and they have been authorized to dismantle and sell the property separate from the right of way under such circumstances and when attempts to sell the road as an entirety, in the performance of its functions, had proved fruitless. *Royal Trust Co.* v. *Washburn, etc., R. Co., supra; Jack* v. *Williams, supra; State, ex rel.* v. *Jack, supra.* And these cases are authority for the rule that in such case the purchaser at receiver's sale can not be compelled to operate the road at a loss. So, unless the road could be rescued from its condition of insolvency and profitlessness, such a condition as the court attached to the sale in this case would be a useless as well as an obstructive one. Self interest would doubtless keep the road in operation if it could be done profitably.

But aside from these considerations, the receiver had not broken the contract with the township and whether a prospective purchaser would do so is a mere speculation about which the court and its receiver were not concerned. Until such a breach occurs or is threatened, the rights of the township are not invaded and what their remedy might be in such a case we are not concerned with in this appeal. The condition was an improvident one in the first instance and as it materially obstructed the execution of sale the court should have removed it.

As to the action of the court in declining to fix the priorities of appellant's debt and those incurred by the receiver in the maintenance and operation of the road since the decree foreclosing appellant's lien and ordering sale of the property, but postponing that adjudication to the time of making distribution, which we are asked to review and settle, we can neither say that the court did not have the right to postpone this consideration nor assume in advance that the priorities when ultimately settled by the court will not be settled in accordance with appellant's

State, ex rel. *v.* Home Brewing Co.—182 Ind. 75.

contention. This action of the court in no way interferes to obstruct or delay the sale of the property under the decree.

The judgment is reversed with directions to the trial court to free its decree of sale of the conditions herein determined to be obstructive of the execution of it and to proceed to carry it into effect.

NOTE.—Reported in 105 N. E. 562. As to what are final and what interlocutory judgments, see 60 Am. Dec. 427. See, also, under (2) Actions 1 C. J. §172; (3) 2 Cyc. 586; (4) 34 Cyc. 317; (6) 16 Cyc. 505; (7, 8) 34 Cyc. 318; (9) 34 Cyc. 363.