DADIRRIAN v. GULLIAN et al.

(Circuit Court, D. New Jersey. March 8, 1897.)

1. TRADE-MARKS—EFFECT OF INJUNCTION.

An injunction forbidding the members of a partnership, charged with infringing a trade-mark, from preparing, putting up, selling, or offering for sale the article in question under the trade-mark in question, makes it a contempt for them to do these acts, not only in their own behalf, but as agents or servants of others, who attempt to carry on the infringing business.

**2. INJUNCTION—AGENTS AND SERVANTS OF DEFENDANTS.**

An injunction forbidding the defendants and their "agents, servants," etc., from doing specified acts, binds the agents only while acting as' such for the defendants, and not in their personal capacity after they have ceased to be defendants' agents or servants, or have become agents or servants of some one else.

Frederic H. Betts and Wm. B. Whitney, for complainant.

Louis C. Raegener, for Senekerim.

Samuel A. Besson, for Otto D. Heisenbuttel.

Albert Gullian, pro se.

John J. Hoppin, for Eva and Reuben Gullian.

KIRKPATRICK, District Judge. This suit was brought for the infringement of the complainant's trade-mark "Matzoon," and was begun in June, 1894, against Mugerditch Gullian, Albert Gullian, and Otto Heisenbuttel, doing business as M. Gullian & Co., in this district, and such proceedings were had that on October 11, 1895, a perpetual injunction was issued out of this court and duly served upon the said defendants. The writ was in the usual form, commanding the said defendants, their and every of their "attorneys, agents, clerks, and servants, to desist from preparing, putting up, selling, offering or advertising for sale, any medicinal beverage made from fermented milk or any similar article under the name of 'Matzoon.'" It appears that after the service of the above injunction the sale of fermented milk by the defendants under the name of "Matzoon" was discontinued, but for a while the same article was put upon the market as "Lebben." Various changes took place in the ownership of the business, so that in December, 1896, Senekerim Gullian, the son of Mugerditch, who it is alleged was at the time of the granting of the injunction in this suit an agent of M. Gullian & Co. in California, began the manufacture and sale of fermented milk under the prohibited name of "Matzoon." In this manufacture and sale it is alleged he was assisted and encouraged by Mugerditch Gullian, Albert Gullian, and Otto Heisenbuttel, the defendants in the suit, as well as by Reuben Gullian, Lazarus Gullian, his brothers (who were also servants of M. Gullian & Co.), and by Taquhy, his wife, and Beatrice Gullian, his infant sister. The petition now filed asks that an attachment for contempt issue against all the persons above named for disobedience of the injunction order of October 11, 1895.

It will be observed that these persons may be separated into two distinct classes, viz. those who were parties to the suit, and those who were merely the servants, agents, or employés of the parties. There can be no question that those who were parties to the suit were not only bound by the injunction order to desist from preparing, putting up, selling, offering or advertising for sale, any medicinal beverage made from fermented milk under the name of "Matzoon," but also from in any way, as servants or agents of others, aiding, assisting, or encouraging them to do the forbidden acts. For failure to obey the court's order in either respect they render themselves liable to the penalties of contempt. Stahl v. Ertel, 62 Fed. 920. So that as to Mugerditch Gullian, Albert Gullian, and Otto Heisenbuttel there is presented for the consideration of the court merely a question of fact,

—did they or either of them do the forbidden act, or aid, assist, or encourage another to do so?

1. As to Mugerditch Gullian. It appears from the verified petition and affidavit annexed, and it is not denied in the answering affidavit of Mugerditch Gullian, that he has aided, assisted, and encouraged Senekerim Gullian in the manufacture and preparation for sale of "Matzoon." He has assisted by packing in boxes bottles labeled "Matzoon," and in loading them when packed in a delivery wagon. These acts are in contravention of the order of the court, and for them he must be adjudged guilty of a contempt. Having made this conclusion upon the facts, it is unnecessary for the court to determine the questions raised as to his liability for the acts of his infant daughter Beatrice.

2. As to Albert Gullian. I am satisfied, after reading the affidavits annexed to the petition and that of Albert Gullian, that he, too, aided, assisted, and encouraged Senekerim Gullian in the sale of "Matzoon," and thereby violated the letter and spirit of the court's order. His duty as a defendant in the suit was clear, and his service, though, as he says, without compensation, in assisting to pack bottles, load them upon the wagon, driving the wagon about with the sign "Matzoon" painted upon its side, and so advertising the sale of the prohibited article, renders him guilty of disobedience to the court's order, and liable to punishment for contempt.

3. As to Otto Heisenbuttel. The evidence presented by the petition and annexed affidavits, tending to show aid or assistance rendered by this defendant to Senekerim Gullian in the conduct of his business, is vague and uncertain. He is said to have called several times at the Gullian house, to have followed petitioner's witness upon the street, and to have accosted her, but the affidavits do not disclose any overt act. Coupled with his denial of all interest in the business of Senekerim, and his explanation of the cause of his visits to the Gullian family, the court is unable to conclude that he has in any way violated the order of the court. As to him the rule should be discharged.

I come now to the consideration of the case as against Senekerim Gullian, Reuben Gullian, and Lazarus Gullian, who were the servants or agents of M. Gullian & Co., the defendants in the suit. I am clearly of the opinion that the only persons who can be attached for contempt in disobeying an injunction order are the parties to the suit in which the order is granted, and those who, being their servants, agents, or employés, with knowledge of the injunction, aid and assist the defendants in disobeying its commands. The writ is directed specifically to the defendants in the suit, and then generally, without naming them, to their servants, agents, and employés. The object of this generalization is to prevent the defendants from doing by others that which the court has forbidden them to do personally; from accomplishing indirectly a result prohibited by the court. The full effect of the order is that the defendant shall not do the unlawful act himself, neither shall his agent, servant, or employé do it for him, nor shall the defendant do it as the agent, servant, or employé of another. Potter v. Muller, 1 Bond, 601, Fed. Cas. No. 11,333. There

is no restraint laid upon the agent, servant, or employé personally, but merely as the agent, servant, or employe of the enjoined defendant. Slater v. Merritt, 75 N. Y. 268; Wellesley v. Mornington, 11 Beav. 181. Notwithstanding the injunction and notice of it, he, upon ceasing to be the agent, servant, or employé of the defendant, is free to act for himself in the protection of his own rights and the prosecution of his own interests, even though it involve his doing the very thing prohibited his former master. Mexican Ore Co. v. Mexican Guadalupe Mining Co., 47 Fed. 356. He may avoid obedience to a mandatory injunction by actually ceasing to be an employé of the company (Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., 54 Fed. 743); and he may enter the service of another master a stranger to the suit, and be as free as he from obligation to obey the court's decree (People v. Randall, 73 N. Y. 416; Slater v. Merritt, 75 N. Y. 268). The bottles with the prohibited trade-mark "M  zoon" bear upon their labels the name of "S. Gullian" as proprietor, and the answering affidavit of Senekerim Gullian sets out that he is the sole owner of the business of manufacturing and selling "Matzoon," and that he carries it on for his own benefit alone. That but little capital is required, and that Senekerim has heretofore conducted a similar business in California, give credit to his assertion. The facts set out in the petition, and not denied, that Senekerim is living in the same house with his father, and that he is assisted by his brothers, and that the place of business (his home) is the same as that heretofore used by his father for the same purpose, are suspicious circumstances, but not sufficient to warrant the court in coming to the conclusion that the business of preparing, putting up, and selling "Matzoon" is being conducted for the benefit of any of the defendants in this suit, or for any other person than the ostensible owner, Senekerim Gullian. With these views of the rights and duties of servants, agents, and employés who may be included in any injunction order, and the want of proof that "Matzoon" is being manufactured and sold for any of the defendants in this suit, I am of the opinion that the rule to show cause why Senekerim Gullian, Reuben Gullian, Lazarus Gullian, Taquhy Gullian, and Beatrice Gullian should not be attached for contempt must be discharged.