ENOCH MORGAN'S SONS CO. v. GIBSON.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1903.)

No. 1,788.

1. APPEAL—APPEALABLE ORDER—DISCHARGING RULE FOR CONTEMPT.
    An order discharging a rule to show cause for contempt in violating an injunction against infringement of a trade-mark, granted by final decree in a suit in equity, is reviewable by appeal.

2. INJUNCTION—VIOLATION—CONSTRUCTION OF DECREE.
    A decree enjoining a defendant from infringing a trade-name, which by its terms prohibits the defendant from in any manner "making use of the word" in connection with goods made for the same purpose as complainant's, is to be construed with reference to the nature of the proceeding and the purpose of the injunction, and cannot be held to prohibit defendant from using the word on his packages in a statement that his product is not that so named, but is better, and in such manner that purchasers could not be deceived.

Appeal from the Circuit Court of the United States for the District of Nebraska.

In an action brought by the Enoch Morgan's Sons Company against John J. Gibson, to restrain the infringement of a trade-mark, in the Circuit Court

of the United States for the district of Nebraska, that court, on September 11, 1900, entered a decree in favor of the appellant, whereby it adjudged: "(1) That the complainant is entitled to the exclusive use of the designation 'Sapolio' as a trade-mark and trade-name for cleaning, polishing, and scouring substances. (2) That an injunction issue herein perpetually enjoining and restraining the defendant, his clerks," etc., "as follows: (a) From in any form or manner whatsoever, by means of labels, circulars, or publications of any kind, or by word of mouth or otherwise, making use of the word 'Sapolish' in connection with the manufacture or sale of a cleaning, polishing, or scouring substance, or any substance to be used for cleaning, polishing, or scouring, or any word like or substantially like said word 'Sopolish' in sound or appearance; and in like manner from making use of the word 'Sapolio,' or any word or words like or substantially like the said word 'Sapolio,' in sound or appearance; and from selling, and from offering to sell, or otherwise disposing of, a cleaning, polishing, or scouring substance of any kind, to the packages or receptacles containing which shall be in any form or manner whatsoever applied the word 'Sopolish.' (b) From manufacturing, selling, or offering for sale or otherwise disposing of a cleaning, polishing, or scouring substance of any kind put up in the form of a cake to which shall be in any form or manner whatsoever applied the designation 'Soap Polish,' and from in any form or manner whatsoever using said designation 'Soap Polish' in connection with the manufacture or sale of a cleaning, polishing, or scouring substance of any kind put up in the form of a cake similar to complainant's. (c) From directly or indirectly, by word of mouth or otherwise, offering, selling, or delivering as 'Sapolio,' or when 'Sapolio' is asked for, a cleaning, polishing, or scouring substance not of complainant's manufacture. (3) But nothing herein contained shall prevent the defendant from making use of the words 'Soap Polish' in connection with his article made in powdered form and sold in bulk."

Thereafter, on December 10, 1901, the appellant filed an affidavit in said cause charging that the defendant had made use, in connection with the manufacture and sale of a cleaning, polishing, and scouring substance, and a substance to be used for cleaning, polishing, and scouring, of the word "Sapolio," by selling such a substance put up in every way like the can produced and filed with the affidavit as an exhibit. An order to show cause why he should not be punished for a contempt was accordingly issued and served on the defendant. To this order the defendant filed a return admitting that he had manufactured and sold a cleaning and polishing substance put up in every way like the can which had been produced and filed in connection with the affidavit. The defendant further stated in his return that the article which he was engaged in manufacturing and selling was made by him in good faith, without any intention of violating the decree of the court; that he had not put the article up in the form complained of nor sold the same until he had submitted the package to his counsel, and had been advised that the sale of the article in the form proposed would not be a violation of the decree; that the complaining party did not itself manufacture any scouring substance put up in the form of a powder, and did not sell any cleaning or scouring substance in that form, but that, on the contrary, the only product manufactured by the complainant and sold by it as "Sapolio" was a solid substance, put up and sold in the form of a cake in wrappers; and that the complainant did not manufacture any substance in the form of a powder put up in cans.

On the hearing below the proof showed that subsequent to the entry of the aforesaid decree the appellee had put up in cylindrical pasteboard boxes, about four inches long and three inches in diameter, a substance in the form of a fine powder, which was used for scouring purposes, and that he was engaged in selling the same. The label pasted around this box bore the following words, printed in large white type displayed on a red background: "GIB-SON'S SOAP POLISH. THE KING OF CLEANERS." Underneath these words were the following, printed in blue ink: "A Scouring Powder;" and at the base of the label, printed in red ink upon a white back-ground, was the following statement: "This is not Sapolio but is as far Superior as Sapolio is to a Common Brick." Other writing on the label stated the advantages

of using a polish in the form of a powder, such as that manufactured by defendant, over the use of a hard scouring substance made in the form of a cake. On the opposite side of the box was a newspaper clipping in such very fine type that it could scarcely be read, giving an account of the original action between the appellant and the appellee entitled "Sapolio vs. Soap Polish." On the production of this evidence the lower court found that the order of injunction had not been violated, and discharged the rule to show cause. Thereupon the appellant prayed for an appeal, and it was allowed.

Archibald Cox, for appellant.

W. D. McHugh (J. M. Woolworth, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Two questions are presented by the record for determination by this court. The first is whether the order made is one from which an appeal will lie; and, if this question be answered in the affirmative, the second question is whether the order discharging the rule to show cause was a proper order.

Relative to the first of these questions, it is to be observed that in the case of Hayes v. Fischer, 102 U. S. 121, 26 L. Ed. 95, Hayes was cited to appear and show cause why he should not be punished for violating an interlocutory injunction granted in a patent case. Upon such hearing a fine was imposed, whereupon he sued out a writ of error. On a motion made to dismiss this writ, it was sustained on the ground that, if the proceeding was to be treated as a part of what was done in the original case, the action taken could only be reviewed on appeal after a final decree therein, which had not been entered; whereas, if it was to be treated as something entirely independent of that suit, the action taken could not be reviewed in any form—citing Ex parte Kearney, 7 Wheat. 38, 5 L. Ed. 391, and New Orleans v. Steamship Company, 20 Wall. 387, 22 L. Ed. 354. In the latter case (New Orleans v. Steamship Company) it was held that a fine imposed for a contempt was a judgment for a specific criminal offense which could not be reviewed by the Supreme Court of the United States on a writ of error, or in any form, as the court had no jurisdiction in criminal cases at that time save on a certificate in case of a division of opinion in the lower court. The decision of the Circuit Court of Appeals for the Second Circuit in Sessions v. Gould, 11 C. C. A. 550, 63 Fed. 1001, was based upon the same facts as the decision in Hayes v. Fischer, an appeal from an order imposing a fine for the violation of an interlocutory injunction having been taken prior to a final decree. The appeal was accordingly dismissed; but in the same case at a later period and after a final decree had been entered, a writ of error was sued out to obtain a reversal of the order imposing the fine, and the writ was entertained and the order reversed; the court holding that the contempt proceeding was independent of the proceedings in the original case and reviewable on writ of error. Gould v. Sessions, 14 C. C. A. 366, 67 Fed. 163. So, also, in the case of Worden v. Searls, 121 U. S. 14, 26, 7 Sup. Ct. 814, 30 L. Ed. 853, where a fine

had been imposed for disobeying an interlocutory injunction, the Supreme Court reviewed the action of the lower court in imposing the fine on an appeal that was taken after a final decree, saying that the action of the lower court in imposing fines for disobeying its orders was not a matter that was so far discretionary with the court as to prevent such action from being reviewed.

It is a well-known fact, to which allusion has twice been made in decisions of this court (In re Reese, 47 C. C. A. 87, 90, 107 Fed. 942, 945; In re Nevitt, 54 C. C. A. 622, 117 Fed. 448, 458), that contempts of court are of two kinds—those that are prosecuted to punish persons for showing disrespect to the courts, either by offensive conduct in their presence or by setting their authority at defiance, in the prosecution of which the entire public is immediately interested because the welfare of the courts is concerned; and those contempt proceedings that are inaugurated at the instance of some private litigant or litigants to compel obedience to an order or decree made in the case for the protection of their individual rights. In the latter class of cases the public at large is not directly interested. The proceeding does not partake of the character of a public prosecution at the instance of the state, as for a crime committed in setting the authority of its courts at defiance, but the proceeding is rather of a civil or remedial nature, for the benefit of a particular individual or individuals whose rights cannot be otherwise preserved. The distinction between the two kinds of contempt has been recognized in other cases. People, etc., v. Diedrich, 141 Ill. 669, 670, 30 N. E. 1038, and cases cited. The case in hand is obviously a contempt proceeding of a civil and remedial nature as distinguished from one of a public or criminal character. The public had no special concern in the question whether the appellee had used words on his labels which violated the injunction, but the appellant was deeply interested in that question, since, if the charge was true, it affected a property right which he had succeeded in establishing. Moreover, if that right was being invaded by the appellee, notwithstanding the decree, the court which entered the decree could with no greater propriety refuse relief, when the fact was called to its attention by the appellant, than it could withhold an execution to collect a judgment which it had rendered. We are of opinion, therefore, that the final action of a court in such a case as the one at bar, whether it be an order discharging the rule to show cause or one imposing a fine tantamount to the injury that has been sustained by the complaining party, is subject to review, and that in equity cases like the one at hand, where the object is to enforce the provisions of a final decree and compel obedience thereto, the remedy is by such an appeal as was taken. We think that this view is fully sustained by the action taken by the Supreme Court in Worden v. Searls, 121 U. S. 14, 26, 7 Sup. Ct. 814, 30 L. Ed. 853. It was expressly held in that case that the action taken by the lower court, in imposing a fine, was brought before the court for review by an appeal taken after the entry of a final decree, and that the action by the court in that matter was not so far discretionary that it could not be reviewed. And so we may say in this case that the order of the lower court discharg-

ing the defendant was not so far discretionary as prevents it from being reviewed. Moreover, it is too plain for argument that the action taken below was in every respect final, and that no relief could be obtained, if the action was erroneous, otherwise than by an appeal.

Holding, as we do, that the order in question was one from which an appeal will lie, and that the case is properly before us for review, we proceed to inquire whether the order discharging the defendant was a proper order.

It is true that the injunction restrained the defendant "from making use of the word 'Sapolio,' or any word or words like or substantially like said word"; but, in view of the nature of the proceeding in which the injunction was granted and the purpose of the injunction, it must be presumed that the object of the court was to prohibit the defendant from using the word "Sapolio" so as to describe goods which he might in future make and sell, or so as to induce a purchaser of such goods to believe that he was buying "Sapolio." The judge who granted the injunction thus construed it, and it must be presumed that he understood the purpose which he had in view. It would be unreasonable to hold that the decree in question intended to say to the defendant, You shall not use the word Sapolio for any purpose whatsoever, not even to distinguish your own goods, and to say to your customers that they are not Sapolio, but are better than Sapolio. The injunction does not contain this broad prohibition, in terms, and if we so construed it it would be giving it a much wider scope than was intended—a scope not fairly imputable to the language employed, and a meaning which is unnecessary to afford the appellant full protection. Besides, the word "Sapolio," where it appears on the defendant's label, is in such a place and in such print that no purchaser would be liable to regard it as descriptive of the article that he was buying, which is plainly branded in large letters "GIBSON'S SOAP POLISH." If he noticed the word "Sapolio" at all, he would see from the immediate context that the article exposed for sale was not "Sapolio," but something entirely different. We may add that it would be going quite too far for any court to say that a manufacturer of Soap Polish in a powdered form shall not use the name of another article, designed for the same use, to praise his own goods, by saying that they are better than the other goods with which they come in competition. We think that the injunction, fairly construed, conveys no such meaning as that imputed to it.

Concerning the words "Soap Polish," which appear on the appellee's label, and of which some complaint is made, it is to be observed that the appellee was only enjoined from applying the words "Soap Polish" to a scouring substance put up in the form of "a cake similar to the complainant's." The proof did not show that the appellee had used the words "Soap Polish" to sell a solid article put up in the form of a cake like the complainant's article "Sapolio." The words were applied by him to a cylindrical box containing a fine powder designed to be used for scouring and cleaning purposes; and the concluding paragraph of the decree shows very clearly that

the court did not intend by its order to arrest the sale of that article, which the defendant was at the time engaged in manufacturing and selling. Upon the whole, we conclude that no violation of the injunction was proven, and that the order below discharging the appellee was clearly right.

It is accordingly affirmed.