L. E. WATERMAN CO. v. STANDARD DRUG CO.

(Circuit Court of Appeals, Sixth Circuit. January 11, 1913.)

No. 2,270.

1. INJUNCTION (§ 211*)—PERMANENT INJUNCTION—CONSENT ORDER.

Complainant having applied for a temporary injunction, defendant at the hearing stated that it would have no further affidavits or evidence on the hearing to be had later and that the matter of temporary injunction might be considered on the hearing as for permanent injunction, whereupon the court entered an order that "a motion for a writ of permanent injunction this day by consent coming on to be heard on the bill of complaint," etc. Held, that such order should not be considered as a con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sent order, but as a submission to final hearing of complainant's right to an injunction and not as admitting such right.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 434; Dec. Dig. § 211.*]

2. INJUNCTION (§ 210*)—ORDER—MODIFICATION—RULE TO SHOW CAUSE.

An injunction order entered at a prior term is not open to modification on a subsequent rule to show cause, but the only power residing in the court in respect to such injunction is to construe and enforce it.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 433; Dec. Dig. § 210.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 97*)—INJUNCTION—VIOLATION.

An injunction enjoined defendant, a corporation, its officers, agents, servants, employés, and all persons taking or holding under, from, or through it, from infringing complainant's trade-mark "Waterman's Ideal Fountain Pen, N. Y.," and also restraining the use of the word "Waterman" in connection with the manufacture and sale of pens unless accompanied by words distinguishing such name from that of complainant. Defendant T., who was a tenant of defendant company, was not a party by name to the original suit, but was shown the injunction order and agreed not to sell pens marked "A. A. Waterman & Co." while a tenant of defendant, but did so, stating orally to each purchaser that they were A. A. Waterman & Co. pens and not the L. E. Waterman pens sold by complainant. *Held,* that such conduct on the part of defendant T. constituted a violation of the injunction in case the relationship between defendant company and T., so far as the sale of pens was concerned, was that of principal and agent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 100*)—JUDGMENTS APPEALABLE—ADDITIONAL PARTIES—CONTEMPT PROCEEDINGS.

Complainant having obtained an injunction against defendant company restraining the use of the word "Waterman" in connection with the sale of pens not of complainant's manufacture, complainant instituted a proceeding for civil contempt against defendant company and defendant T., who was not a party to the original suit, claiming that T. was an agent of defendant company and that the injunction had been violated by sales made through him. *Held,* that an order dismissing the proceeding was appealable both as to defendant corporation and as to T.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 114; Dec. Dig. § 100.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Action by the L. E. Waterman Company against the Standard Drug Company. From an order dismissing a rule entered against defendant and one Sol. Teller, as its alleged agent, to show cause why a writ of attachment should not be issued against them as for contempt for violating an injunction previously granted in favor of complainant, it appeals. Reversed and remanded.

Samuel S. Watson, of New York City, for appellant.

John A. Chamberlain and T. H. Bushnell, both of Cleveland, Ohio, for appellee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before WARRINGTON and DENISON, Circuit Judges, and Mc-CALL, District Judge.

WARRINGTON, Circuit Judge. This is an appeal from an order made in the court below November 9, 1911, dismissing a rule theretofore entered against appellee and one Sol. Teller, as its alleged agent, to show cause why a writ of attachment should not issue against them "as and for contempt of court" for violating an injunction order previously granted in the cause. The injunction had been granted nearly two years before upon bill of appellant, and proofs of infringement of complainant's trade-names and trade-marks and of unfair competition; and these matters form the subject of the controversy. The order enjoined defendant, a corporation, "its officers, agents, servants, employés, and all persons taking or holding, under, from, or through it, from" infringing complainant's trade-mark "Waterman's Ideal Fountain Pen, N. Y.," also its trade-mark "Waterman's," as stated in four paragraphs. Paragraphs 3 and 4 are relied on and are as follows:

"(3) Using the name of 'A. A. Waterman & Co.,' or any corporate name containing the word 'Waterman' or 'Waterman's' or 'Watermans's' in connection with the manufacture, or sale, of fountain pens, unless accompanied by words which conspicuously, clearly, and unmistakably distinguish such corporate name from that of the complainant.

"(4) Selling, representing, or advertising in any manner whatsoever fountain pens (other than fountain pens of complainant's manufacture), as 'Waterman Pens,' 'Waterman's Pens,' 'Watermans's Pens,' 'Waterman Fountain Pens,' 'Waterman's Fountain Pens,' 'Watermans's Fountain Pens,' or using any other words which would indicate that the fountain pens so sold represented or advertised are fountain pens of complainant's manufacture."

[1] The application made under the original bill was for a temporary injunction, but counsel for the present appellee admittedly stated to counsel for the present appellant:

"That defendant would have no further affidavits or evidence upon a hearing to be had later and that the matter of a temporary injunction might be considered upon hearing as for a permanent injunction."

The order of injunction as made commences thus:

"A motion for a writ of permanent injunction this day by consent coming on to be heard upon the bill of complaint," etc.

The order remains in full force and effect; no appeal or other steps having been taken to review it. It was treated below by Judge Killits as a consent order; but we interpret the consent to have been meant and considered as a submission to final hearing, and not as admitting complainant's *right* to the injunction.

The question demanding ultimate consideration is whether the true legal relation between the appellee Drug Company and Sol. Teller places the latter fairly within the language of the order enjoining the Drug Company, "its officers, agents, servants, employés, and all other persons taking or holding, under, from, or through it." Stated shortly: Is Teller an agent or employé of the company? The proceeding for contempt was heard and disposed of upon affidavits and exhibits. The acts claimed to have been violative of the order of injunction were

committed within the Euclid Avenue store of the Drug Company in Cleveland. The defenses made in substance are: (1) That the relation between the Drug Company and Teller was at the date of the injunction, and still is, that of landlord and tenant; and (2) that Teller was not a party to the original suit. The learned trial judge, who dismissed the rule to show cause, did not find it necessary to determine the true relation that existed between the Drug Company and Teller. This was because of a ruling made in L. E. Waterman Co. v. Modern Pen Co., 183 Fed. 119, 105 C. C. A. 408 (C. C. A. 2d Cir.), that the third paragraph of the injunction order there involved was erroneous; the court below holding in the instant case:

"The facts do not connect the Standard Drug Company with the transaction unless it may be said that they are responsible for the acts of Sol. Teller, their tenant. In fact, there is at most here nothing more than a technical contempt, or a technical violation of an order which it is quite plain the court would not now grant under the same circumstances and which we are very clear the court granting it would not have granted had it been contested."

[2, 3] Judge Hand has since interpreted the decision of the Court of Appeals in the case just cited to mean that "there should be no absolute injunction against the name 'A. A. Waterman & Co.' on the showing made," but he did not understand the rule to forbid placing a limitation upon the use of the name. (D. C.) 193 Fed. at 248. Apart from that case, however, it is clear that the order of injunction, which Judge Tayler had entered at a previous term, was not open to modification on the rule to show cause. Loeser v. Savings Deposit Bank & Trust Co., 163 Fed. 212, 213, 89 C. C. A. 642 (C. C. A. 6th Cir.); Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Barrell v. Tilton, 119 U. S. 637, 643, 7 Sup. Ct. 332, 30 L. Ed. 511; Turner v. Railway Co., 24 Fed. Cas. 367. The only power residing in the court below, or in this court, in respect of such an order of injunction, is to construe and enforce it. It was admitted that, although Teller was not a party by name to the original suit, when the order of injunction was served on the Drug Company, it was either shown or read to Teller, and that he "agreed not to sell the pens marked A. A. Waterman & Co. while tenant of defendant." This is hardly consistent with a total absence of control in the Drug Company. Both Teller and a saleswoman in charge of the business carried on by him stated in substance in affidavits that they sold "A. A. Waterman & Co." pens, and that the pens were so marked, but that they in each instance orally stated to the purchaser that they were such pens, and that she also stated that they were not the L. E. Waterman pens.

Thus Teller's agreement "not to sell the pens marked A. A. Waterman & Co.," before mentioned, was confessedly not kept. It is equally clear that, if the relation between the company and Teller is in legal effect that of principal and agent, both the Drug Company and Teller violated the order of injunction. Estes v. Worthington (C. C.) 30 Fed. 465, 466; Dadirrian v. Gullian (C. C.) 79 Fed. 784, 787; Featherstone v. Ormonde Cycle Co. (C. C.) 53 Fed. 111; Cramer v. Fry (C. C.) 68 Fed. 201, 205. The injunction forbade the Drug Company to use the name "A. A. Waterman & Co.," or to use "any corporate

name containing the word 'Waterman,'" in connection with the sale of fountain pens, "unless accompanied by words which conspicuously, clearly, and unmistakably distinguish such corporate name from that of the complainant." If we regard this language, rather than one of the affidavits to the contrary, the late Judge Tayler thought it was not enough for the seller, when disposing of the pens, simply to state orally either that such pens were made by A. A. Waterman & Co., or that they were made by that company, and were not "L. E. Waterman pens"; because the inhibition is that such sales must be accompanied by words which *conspicuously* distinguish the name of A. A. Waterman & Co. from that of the L. E. Waterman Co. An oral statement cannot very well be employed to distinguish the two names "conspicuously." The injunctional order appears to be based on the theory that the public understands "Waterman" to signify the appellant's pens, and the evident purpose was to avoid confusion and deception of the public (Dietz v. Horton Mfg. Co., 170 Fed. 872, 96 C. C. A. 41 [C. C. A. 6th Cir.]), and so to protect the average customer, rather than the discriminating dealer. It has been aptly said of the two names, L. E. Waterman Co. and A. A. Waterman & Co., in another case, that the ordinary customer would scarcely heed the difference between the initials "L. E." and "A. A."; he would be influenced by the name "Waterman." Indeed, it is hard to see how the requirement of the present injunction can be satisfied without plainly stating at least upon the packages containing A. A. Waterman & Co. pens, and similarly in advertising the pens, both that they are A. A. Waterman & Co. pens, and not pens of the L. E. Waterman Co. In L. E. Waterman Co. v. Modern Pen Co. (D. C.) 193 Fed. at page 247, it was said:

"Now it is perfectly plain to any candid person that the ordinary buyer pays little attention to such prefixes as 'L. E.' and 'A. A.'—an inattention upon which it is quite clear to me the defendant's purchase of the name depended. Dealers will, of course, know the difference very well; but they are privy to the fraud. It is the form in which the wares come to the final buyer that counts, and, while the defendant is not responsible for the spontaneous representation of dealers, it must not so mark or dress its goods as to create, or aid in, any misapprehensoin by the buyers."

Again, as there stated (193 Fed. 248):

"Therefore a decree will pass forbidding the use of 'Ideal,' of 'Waterman,' and of 'A. A. Waterman & Co.,' except in connection with the following phrase or its equivalent, all words to be written in letters of the same size, 'not connected with the original "Waterman" pen.'"

Further, as Judge Denison recently summed up in the Webster's Dictionary Case (G. & C. Merriam Co. v. Saalfield, 198 Fed. at 375 [C. C. A. 6th Cir.]):

"Defendant may not use the word at all, unless he accompanies it with the explanation; he must neutralize an otherwise false impression; he must 'unmistakably inform' the public that the article is of his production (Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 200 [16 Sup. Ct. 1002, 41 L. Ed. 118]); he must so distinguish that 'no one with the exercise of ordinary care can mistake' (Saxlehner v. Eisner & Mendelsohn Co., 179 U. S. 19, 41 [21 Sup. Ct. 7, 45 L. Ed. 60]); he must give 'the antidote with the bane' (Herring, etc., Co. v. Hall, etc., Co., 208 U. S. 559 [28 Sup. Ct. 350, 52 L. Ed. 616])."

[4] Clearly the object of the present proceeding is to vindicate and enforce private rights; it is remedial in its nature, and involves a charge only of civil contempt, not criminal contempt. Merchants' Stock & Grain Co. v. Board of Trade, 187 Fed. 399, 402, 109 C. C. A. 230 (C. C. A. 8th Cir.), and numerous cases there cited; Enoch Morgan's Sons Co. v. Gibson, 122 Fed. 422, 423, 59 C. C. A. 46 (C. C. A. 8th Cir.). It follows that, since the Drug Company was defendant in the original suit, the case as to it was appealable to this court. Merchant's Stock & Grain Co. v. Board of Trade, 187 Fed. 399, 109 C. C. A. 230; Enoch Morgan's Sons Co. v. Gibson, 122 Fed. 423, 59 C. C. A. 46; Matter of Christensen Engineering Co., 194 U. S. 458, 460, 461, 24 Sup. Ct. 729, 48 L. Ed. 1072. Considering the object and nature of the present proceeding, in connection with the fact that Teller was joined as a defendant upon the theory and claim that he was an agent of the Drug Company, we think it is equally plain that the case was appealable as to him; because, if such relation existed, he admittedly aided and assisted the company in disobeying the injunction, and so was amenable to process as a party. Estes v. Worthington, supra; Dadirrian v. Gullian (C. C.) 79 Fed. 786. See, also, Employers' Teaming Co. v. Teamsters' Joint Council (C. C.) 141 Fed. 679. After the rule had been dismissed, appellant filed a petition again asking for a rule to show cause against the Drug Company and Teller "jointly and severally, why a writ of attachment should not issue against them as and for contempt of court in violating an injunction order of this court, dated December 14, 1909" (the order in question); and, further, that a reference be made to take proofs upon stated issues of fact tendered, among which is one concerning Teller's relation to the Drug Company. If it should appear on investigation that their relation was that of principal and agent, the court in which the injunction was granted would have no more right to decline to enforce it than it would to forbid the issue of an execution to collect an ordinary judgment there rendered. Enoch Morgan's Sons Co. v. Gibson, 122 Fed. 423, 59 C. C. A. 46.

Since this relation was not determined, the ruling below must be reversed with costs, and the cause remanded for trial upon that issue.