## SHIPPING ROOM SUPPLIERS, INC., v. SCHOENLAUB et.

Common Pleas Court, Hamilton County.

No. A-121001.  Decided February 7, 1951.

Gorman, Silversteen & Davis, Sol N. Wolfson, Cincinnati, for plaintiff.

Louis J. Schneider, Jr., Cincinnati, for defendants.

### OPINION

By BADER, J.

This case came before the Court on the citation for Sam Schoenlaub to show cause why he should not be punished for contempt of Court.

The evidence adduced at the hearing and the affidavit indicate that Harry R. Schoenlaub, one of the defendants, was employed by the plaintiff, Shipping Room Suppliers, Inc., under a written contract of employment wherein it was agreed "that for a period of two years" after he (Harry Schoenlaub)

leaves the employment of T. M. Sasser, that he will not engage in the manufacture, handling, servicing or distribution of material handling equipment, such as two and four wheel trucks, linen trucks and other items now manufactured and handled by the Shipping Room Suppliers, Inc. This also includes stapling, tacking and stitching machines and other items as now handled, serviced, sold or manufactured by the Shipping Room Suppliers, Inc.

It appears further from the evidence adduced that immediately after leaving the employ, Harry R. Schoenlaub and his brother, Sam Schoenlaub, who was not a party to the contract of employment, entered into a partnership agreement for the manufacture of articles similar to those manufactured by the Shipping Room Suppliers, Inc. and carried on their business under the firm name and style of "H. & S. Schoenlaub Mfg. Co."

Suit was filed by the Shipping Room Suppliers, Inc. against Harry R. Schoenlaub and Sam Schoenlaub, individually and as partners doing business as the H. & S. Schoenlaub Mfg. Co. seeking to enjoin them among other things from manufacturing selling or offering for sale trucks, etc., which are manufactured by the plaintiff.

On October 5, 1950 the Court, after a lengthy trial, made the following order: "It is, therefore, ordered, adjudged and decreed that the defendant, Harry R. Schoenlaub, individually, and that Harry R. Schoenlaub and Sam Schoenlaub as partners doing business as H. & S. Schoenlaub Mfg. Co. be and they are hereby enjoined from manufacturing directly or indirectly through others similar types of trucks, stapling devices, and packaging systems now manufactured by plaintiff for a period of two years from March 3, 1950."

The unrefuted testimony before the Court is that Harry R. Schoenlaub and Sam Schoenlaub, doing business as H. & S. Schoenlaub Mfg. Co. dissolved their partnership on September 27, 1950. Sam Schoenlaub individually went into a like business for himself and Harry R. Schoenlaub no longer has any interest in the business and has no connection with or influence therein and Sam Schoenlaub is the sole owner of the business operated by him as the Schoenlaub Mfg. Co.

Sam Schoenlaub is now before the Court on a citation to show cause why he should not be punished by the Court for contempt for continuing to manufacture as an individual those things which he was enjoined from manufacturing and selling as a partner of Harry R. Schoenlaub doing business as the H. & S. Schoenlaub Mfg. Co.

The authorities cited by counsel for both sides have been

carefully read by the Court as have many more not cited by counsel.

Counsel for the plaintiff cites among others two Ohio cases. The one, Miller v. Toledo Grain & Milling Co., 21 Ohio Cir. Ct. R. 325 had to do with a certain design. The respondents were agents for Friedman when he was enjoined and had knowledge of the injunction and the order of the Court and can be distinguished from the facts at bar.

In the other Ohio case, **Farmers' Fertilizer Co. v. Ruh, 7 Oh Ap 430,** the enjoined corporation dissolved and then reincorporated under the same name, same officers and stockholders and carried on the same work. The Court in that case said, **7 Oh Ap** on **page 432:** "The new corporation was controlled by officers and agents and stockholders who were bound by the injunction, and who were acting under a charter. Looking at the new company as a collection of individuals, it would be subject to the injunction. It is a case, therefore, where the fiction of reincorporation should, as to the injunction, be disregarded."

The Court cannot go beyond the order of the trial Court and a violation of that order, whether it be right or wrong, just or unjust, by any of the parties bound by it is punishable as contempt against the Court.

For the Court to determine there has been an actual breach of the injunction, whether any of the orders have been violated, it is important to study the relief which was granted by the Court to plaintiff as well as the circumstances in connection therewith. It appears to the Court that each case must stand "on its own feet." A search of the law indicates that we have very little law on the subject in Ohio and nowhere can there be found a case which is on "all fours" with the case at bar.

The question before the Court is whether or not Sam Schoenlaub, who is enjoined as a partner doing business as H. & S. Schoenlaub Mfg. Co., can carry on the same kind of business as an individual, under a different name and as sole owner and in which Harry R. Schoenlaub has no interest or connection.

In the case of Berger v. Superior Court, 175 Cal. 719, on page 721, 167 P. 143, on page 144, 15 A. L. R. 373, the Court said: "But despite expressions in some authorities that at first blush lend support to the contention of respondent, it is generally held that a theory of disobedience of the injunction cannot be predicated on the act of a person not in any way included in its terms or acting in concert with the enjoined party and in support of his claims."

In the case of United States Playing Card Company v.

Spalding, C. C., 92 F. 368, the defendants were enjoined as manufacturers of A. G. Spalding Company. This did not enjoin them from manufacturing the same articles for other agents.

In differentiating the Lennon case [Ex parte Lennon], 166 U. S. 548, 17 S. Ct. 658, 41 L. Ed. 1110, the Court said, 92 F. on page 369: "* * * is as broad as any; but it must be read, as it was used, with reference to the case, which was against a locomotive engineer, the servant of a corporation enjoined about hauling cars, who was not named in the suit or the injunction, nor served upon, but had notice. The case does not show that he would have been held if he had done the same thing, after the notice, upon another road."

In the case of Dadirrian v. Gullian, C. C., 79 F. 784, 785, the Court held: "Syl. 2. An injunction forbidding the defendants and their 'agents, servants,' etc., from doing specified acts, binds the agents only while acting as such for the defendants, and not in their personal capacity after they have ceased to be defendants' agents or servants, or have become agents or servants of someone else."

The Court held in Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., C. C., 54 F. 730, Syl. 5, 19 L. R. A. 387: "The employes while in the employ of the defendant company, must obey this mandatory injunction, but may, without contempt of court, avoid or evade obedience thereto by ceasing to be such employes; otherwise the injunction would, in effect, be an order compelling the employes to continue the relation of servant to the complainant,—a kind of order never yet issued by a court of equity."

In the case of Mexican Ore Co. v. Mexican Guadalupe Mining Co., C. C., 47 F. 351, Syl. 3, at page 352, the Court said: "The director would not be deemed guilty of contempt where it appeared that after service of the injunction on the corporation he resigned his office, and sued it upon a bona fide indebtedness due him, and caused a sale of its property in satisfaction of the judgment obtained." On page 356 of 47 F. the Court said: "So much of the order of July 10, 1889, as applies to Mr. Clayton is to be found in the enjoining clauses of that order, which was directed not only to the companies defendant, but as well to their officers, directors, trustees, agents, employes, workmen, and servants; and it is admitted that at that time and up to April 10, 1890, Mr. Clayton was a director and vice-president of one or all of the defendant corporations. By the tender and by the acceptance of his resignation his connection with such corporations lawfully ceased on that day. It is undoubtedly true that an injunction

or an enjoining order against a corporation and its officers, although the officers are not named personally, and are not parties to the record in any way, is binding upon them; but the scope of such an injunction or enjoining order is to restrain the officers from doing the act prohibited in their official capacity as an officer of the corporation, or in their individual capacity, for the benefit or in the interest of the corporation enjoined."

See also Hoover Co. v. Exchange Vacuum Cleaner Co., Inc., D. C., 1 F. Supp. 997, Syl. 1.

See Aluminum Colors Incorporated v. Empire Plating Co., D. C., 5 F. Supp. 687, Syl. 4. On page 688 of 5 F. Supp. the Court said: "If the defendant of record had retained any interest in the new company or had taken any part in its infringing acts, or if since the decree there has been merely a continuation of defendant's former acts and trespass, the situation would be quite different from what we find it."

In the case at bar, while Sam Schoenlaub was made a defendant both individually and as a partner doing business as the H. & S. Schoenlaub Mfg. Co., he is only enjoined as a partner and not an individual. Sam Schoenlaub did not have a contract with plaintiff and there is no privity so far as he is concerned. The contract was with Harry R. Schoenlaub and it is only he or those with whom Harry R. Schoenlaub conspired and acted either as an employee, servant or partner whom the plaintiff can expect to adhere to the ruling. The partnership was dissolved prior to the entry of the decree. Harry R. Schoenlaub has not in any way been associated with Sam Schoenlaub in his new business since September 27, 1950. There is no evidence of collusion or conspiracy to violate the order of the Court.

It is the opinion of the Court that Sam Schoenlaub was enjoined only as a partner of Harry R. Schoenlaub doing business as the H. & S. Schoenlaub Mfg. Co., and not as an individual, in the same manner as directors, employees, officers, agents, etc., can be enjoined. If he were still a partner of Harry R. Schoenlaub he may be guilty of contempt.

To hold that Sam Schoenlaub, under the set of facts presented, is guilty of contempt of Court would be allowing the plaintiff to accomplish through a citation for contempt that which he could not realize through an action in equity.

The Court is of the opinion that no order of Court has been violated, that Sam Schoenlaub is not guilty of contempt. The contempt proceedings are dismissed at the cost of the plaintiff.