In re GENESYS, INC., Debtor.

No. 00–00265.

United States Bankruptcy Court,
District of Columbia.

Oct. 26, 2001.

Richard H. Gins, Washington, DC, for Debtor.

## DECISION RE DEBTOR'S AMENDED APPLICATION FOR ATTORNEY'S FEES

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The court will grant $205.56 of the fees and expenses sought in the "Amended Application for Attorney's Fees to be Paid by the Department of the Air Force for Violation of the Automatic Stay" ("Amended Application") (Docket Entry ("D.E.") No. 54, filed September 19, 2000).

I

On May 31, 2000, the court conducted a hearing regarding the debtor's motion to show cause and for sanctions against the United States Air Force which resulted in the court's determination that the government violated the automatic stay, albeit technically, when it exercised a post-petition setoff against the debtor. In its Interim Order re Motion for Sanctions (D.E. No. 33, entered June 5, 2000), the court ordered the debtor's counsel to submit a narrative of work performed together with detailed time records setting forth the attorney's fees sought as a compensatory contempt sanction for the Air Force's violation of the automatic stay.

The debtor submitted a fee request in the amount of $17,146.50. The court expressed its concern that the debtor had amassed an inordinate amount of fees given the technical nature of the stay viola-

tion and the fact that on April 10, 2000, the Air Force's counsel notified the debtor's counsel that the setoff was being reversed. Notwithstanding that notification, the debtor continued vigorously to pursue the litigation. The court found the fee request additionally deficient because (1) it contained time spent on matters unrelated to the contempt motion; (2) time entries were lumped together, making it impossible to determine the amount of time spent on a particular task; and (3) certain time entries did not sufficiently describe the matter to which the service was related. The court directed the debtor to submit an amended application if it still desired to pursue recovery of attorney's fees.

## II

In its Amended Application, the debtor seeks $13,271.50 in fees. The debtor maintains that the violation of the stay was not technical, noting that the Air Force violated the automatic stay despite having been notified three times of the pending bankruptcy. The debtor further maintains that the stay was violated for the purpose of putting the debtor out of business (by depriving the debtor of funds owed it on certain accounts receivable) and, ultimately, the violation caused the debtor to go out of business.

The debtor overlooks the fact that the threat to its survival was not triggered by the violation of the stay, but rather the Air Force's refusal to pay the debtor for outstanding sums due, a refusal the automatic stay did not prohibit. Under *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), the withholding of funds owed a debtor for eventual setoff purposes is not a violation of the automatic stay. Moreover, even without a right of setoff, an account obligor's failure to make payment to a trustee (or a debtor-in-pos-

session enjoying the rights of a trustee under 11 U.S.C. § 1107(a)) is not a violation of the automatic stay. *See United States v. Inslaw,* 932 F.2d 1467, 1472 (D.C.Cir.1991), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992) (§ 362(a)(3) does not apply "[w]henever a party against whom the bankrupt holds a cause of action (or other intangible property right) acted in accord with his view of the dispute rather than that of the debtor-in-possession or bankruptcy trustee"); *In re Williams,* 249 B.R. 222 (Bankr.D.D.C. 2000); *In re Mountaineer Coal Co., Inc.,* 247 B.R. 633, 644 (Bankr.W.D.Va.2000).

The debtor's complaints regarding the automatic stay were not aimed at merely achieving a reversal of the exercise of the right of setoff. Had that been all the debtor was attempting to achieve, that result would not have alleviated any ongoing economic harm to the debtor. There thus was no reason to rush addressing the violation, a technical one that was not causing the debtor any economic harm.

As to the technical violation itself (which was causing no ongoing economic harm) it is questionable that any action by the debtor was necessary. The debtor's counsel himself maintained that the stay violation was void. Accordingly, the stay violation would be treated by the court as void, based on the violation of the automatic stay, if the exercise of setoff (as opposed to the passive act of freezing the account) ever became pertinent by reason of the Air Force's relying in some future litigation on the exercise of the right of setoff. However, it was appropriate for the debtor to take steps to have the Air Force vacate the setoff instead of the less certain route of relying on the void character of the setoff.

Nevertheless, there was no reason for the debtor to damage itself by incurring more than modest attorney's fees in ad-

dressing the technical violation of the automatic stay. Any reasonable debtor would have minimized its attorney's fees by having counsel simply request reversal of the setoff and waiting a reasonable period of time for the Air Force to respond: no emergency existed.

Instead, the debtor's aim in raising its complaints was from the outset an attempt to compel the Air Force to pay the debtor the invoices that the debtor claimed were owing. On Monday April 3, 2000, in a letter entitled Notice of Contempt, the debtor's special counsel (Lawrence J. Sklute) wrote to Ted Scheidt, the Air Force's Termination Contracting Officer, stating:

> . . . **It is improper for you [to] deny payment to GeneSys,** and instead offset the alleged debts . . . [because] . . . [i]t is prohibited by the automatic stay.
>
> . . .
>
> [The Air Force] is in contempt of the automatic stay provision of the Bankruptcy Code. **GeneSys is preparing to pursue contempt proceedings** against [the Air Force] before the U.S. Bankruptcy Court in Washington, D.C. **To avoid these proceedings by April 4, 2000 please remit payment to GeneSys for the subject invoices amounting to $126,116.50 or written acknowledgment that [the Air Force] will provide payment to GeneSys by a date certain during this week.**

[Emphasis added.] If the automatic stay entitled the debtor to immediate payment of the $126,116.50, the demand in the letter for immediate payment would have been understandable, but the automatic stay did not entitle the debtor to that result.

Mr. Sklute spoke to the Air Force (presumably Mr. Scheidt) by telephone on the next day, Tuesday April 4, 2000, and was advised that his request (for vacating of the setoff *and* remitting of the $126,116.50

that had not been released because of the right of setoff) was under review. Motion for Show Cause Order (D.E. No. 15) at pp. 2 and 9.

On Wednesday April 5, 2000, Mr. Scheidt, wrote to Air Force accounting and finance personnel directing them to vacate the setoff. *See* Declarations of Mr. Scheidt, Mr. Jeff Daniel, and Maj. James Slear.

On Wednesday April 5 or Thursday April 6, 2000, Assistant United States Attorney Daria J. Zane was advised of the matter. She attempted to contact counsel for the debtor to advise counsel that the Air Force was in the process of vacating the setoff, but encountered some difficulty in identifying precisely who was acting as the debtor's counsel, and was unable to reach the debtor's counsel until Monday April 10, 2000, when she spoke to Richard Gins, the debtor's bankruptcy counsel. Zane advised Gins that the Air Force was vacating the setoff. (In due course, the setoff was vacated on April 14, 2000. *See* Daniels Declaration.) Gins advised Zane that the contempt motion had been filed the previous Friday, April 7, 2000.

Like the "Notice of Contempt," the contempt motion itself (D.E. No. 15) sought not merely a reversal of the exercise of the right of setoff, but an order directing the Air Force to remit payment on the basis that the setoff had been improper. The court issued an order (D.E. No. 18) scheduling the matter for hearing, but noted in the order that the debtor needed to address why the withholding of proceeds of the contract was not authorized by 11 U.S.C. § 553(a) as interpreted in *Strumpf.* Despite this, the debtor subsequently incurred additional attorney's fees by continuing to press for turnover as a remedy.

### III

■ As held in *Armstrong v. Executive Office of the President, Office of Admin.,* 1

F.3d 1274, 1289 (D.C.Cir.1993), for civil contempt sanctions to be imposed there must be a violation of an order that is clear and unambiguous and the violation must be proven by clear and convincing evidence. The Air Force was in contempt of the automatic stay.

■ The provisions of 11 U.S.C. § 362(a)(7) were clear and unambiguous. The Air Force, with knowledge of the bankruptcy case, nevertheless exercised its right of setoff, and the proof of this violation is clear and convincing.

Although the Air Force may have diligently addressed the remedying the violation once the debtor's attorney complained, the Air Force has not attempted to argue a defense that the violation occurred despite reasonable diligence in attempting to comply with the automatic stay. *See Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, AFL–CIO–CLC,* 103 F.3d 1007, 1017–19 (D.C.Cir.1997). The Air Force's papers adduced no evidence regarding the procedures it has in place to assure that setoff is not exercised once a bankruptcy case is filed, or what efforts were made to assure compliance once it learned of the bankruptcy case.

## IV

Some courts hold that an award of contempt damages for violation of the automatic stay is permissive, with the trial court having the discretion to deny an award of damages if the violation of the automatic stay is not sufficiently egregious. *Johnston Environmental Corp. v. Knight (In re Goodman),* 991 F.2d 613, 620 (9th Cir.1993). *See also Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973 (1st Cir.1995) (contempt sanctions under § 105 are discretionary); *In re Costa,* 172 B.R. 954, 966 (Bankr.E.D.Cal.1994) ("Compensatory damages are discretionary and should not be awarded to the undeserv-

ing." [Footnote and citations omitted.]) Under 11 U.S.C. § 105(a), the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The word "may" suggests that the court's powers are discretionary, and perhaps some decisions have looked to that in holding that a court has discretion to decline to grant compensatory sanctions for a violation of the automatic stay.

On the other hand, other decisions (including decisions of the very same courts of appeals) have held that when a party has suffered damages by reason of contempt, the trial court is without discretion to deny an award of compensatory damages. *See Parker v. United States,* 153 F.2d 66, 70 (1st Cir.1946). *See also Weitzman v. Stein,* 98 F.3d 717, 719 (2d Cir. 1996); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529 (11th Cir.1986); *Thompson v. Cleland,* 782 F.2d 719 (7th Cir.1986); *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.,* 639 F.2d 29, 41 (1st Cir.1980); *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2nd Cir.1979); *Universal Match Corp. v. New Castle Products, Inc.,* 308 F.2d 842 (7th Cir.1962); *Yanish v. Barber,* 232 F.2d 939, 946 (9th Cir.1956) *Waterman Co. v. Standard Drug Co.,* 202 F. 167, 172 (6th Cir.1913); *Enoch Morgan's Sons Co. v. Gibson,* 122 F. 420, 423 (8th Cir.1903); *In re Grand Jury Subpoena of June 12, 1986,* 690 F.Supp. 1451, 1453 (D.Md.1988).

■ The court was unable to find any decision addressing the possible conflict between these two sets of decisions. Congress obviously meant for the automatic stay to have the force of an order, with the difference being that the stay arises immediately upon the commencement of the case instead of awaiting issuance of an order. The automatic stay is no less wor-

thy of protection than a court order, and a violation of either the automatic stay or a court order ought to give rise to the same sanctions. Accordingly, the court is of the view that it has no discretion to withhold an award of compensatory damages for violation of the automatic stay.

However, the only damages the debtor suffered were attorney's fees for addressing the technical violation of the automatic stay. The court thus turns next to whether attorney's fees are part of the damages that may be recovered for contempt.

## V

■ Under the so-called American rule, a prevailing party, except in certain limited circumstances, is not entitled to recover attorney's fees. One court of appeals held that in contempt proceedings an exception permitting a recovery of attorney's fees exists only if the contempt was willful. *King v. Allied Vision Ltd.*, 65 F.3d 1051, 1063 (2d Cir.1995). *See also Omega World Travel, Inc. v. Omega Travel, Inc.*, 710 F.Supp. 169, 173 (E.D.Va.1989), *aff'd*, 905 F.2d 1530, 1990 WL 74305 (4th Cir.1990) (table). However, the Second Circuit appeared to withdraw from that position in *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996) ("while willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them"). The Court of Appeals for the D.C. Circuit, at least in dictum, adheres to the view that willfulness is not a prerequisite. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1017 n. 14 (D.C.Cir.1997) (citing cases from the Courts of Appeals for the Fifth, Sixth, Seventh, and Ninth Circuits). *Accord, John Zink Co. v. Zink*, 241 F.3d 1256, 1261 (10th Cir.2001) (citing, in addition, decisions from the Courts of Appeals for the Third and Eleventh Circuits, and

rejecting *King* and *Omega* as unpersuasive).

## VI

However, a further twist to the issue is that some courts have held that the granting or denying attorney's fees as part of compensatory contempt damages is committed to the sound discretion of the district court. *Hartman v. Lyng*, 884 F.2d 1103, 1107 (8th Cir.1989) (upholding district court's refusal to award fees because "defendants were simply mistaken in their interpretation of the injunction"); *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 682–83 (9th Cir.1986) (district court has discretion to deny attorney's fees even when damages caused by contempt are established) (overturning dictum in *Yanish*, 232 F.2d at 947); *Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir.1981). The court in *Donovan*, 781 F.2d at 683, cited *Copeland v. Martinez*, 603 F.2d 981, 984 (D.C.Cir. 1979), as being of the same view "by implication."

■ If in the D.C. Circuit a trial court has discretion to deny attorney fees as part of civil contempt damages, the court could very well choose to deny an award of attorney's fees here. The technical violation of the automatic stay was promptly remedied, and there is no evidence that the Air Force acted other than in good faith. Moreover, debtors ought to employ some judgment in whether to pursue contempt proceedings for only a technical violation of the automatic stay that caused no economic harm. Finally, the court ought to discourage contempt proceedings seeking recovery of trifling amounts of attorney's fees incurred by a debtor in addressing the occasional unintentional violation of the automatic stay that occurs in almost every bankruptcy case.

However, the court announced that it would award appropriate attorney's fees, and put the debtor to the burden of applying for fees. Although the debtor has acted like a hog by seeking an astronomical sum (and, although as some courts have observed, when a pig becomes a hog, it goes to slaughter), the court will nevertheless attempt to award an appropriate sum.

## VII

■■■ The trial court has broad discretion in determining the appropriate amount of attorney fees. *King,* 65 F.3d at 1063. The court looks to two factors in determining the appropriate amount of attorney's fees to award as a sanction: (1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated. *Topalian v. Ehrman,* 3 F.3d 931, 937 (5th Cir.1993) (determining the amount of attorney's fees to award as a sanction for a violation of F.R. Civ. P. 11). Bankruptcy courts similarly impose a duty on the debtor to mitigate its damages stemming from a violation of the automatic stay. *Lori v. Lori (In re Lori),* 241 B.R. 353, 357 (Bankr. M.D.Pa.1999); *Clayton v. King (In re Clayton),* 235 B.R. 801, 811–12 (Bankr. M.D.N.C.1998); *In re Esposito,* 154 B.R. 1011, 1015 (Bankr.N.D.Ga.1993).

■■■ In this case, the debtor's duty to mitigate its damages involved obtaining a reversal of the exercise of setoff. As noted already, the exercise of setoff was causing the debtor no economic harm because the Air Force had the right to preserve its right of setoff by simply freezing the account. Accordingly, there was no emergency, and no reason to subject the estate to attorney's fees for pursuing contempt as an emergency matter. All that was required was for the debtor to request the Air Force to undo the technical violation of the automatic stay and to wait a reasonable period of time for the Air Force to review the matter. Two days after the debtor's counsel sent his letter on April 3, 2000, notifying the Air Force of the violation, the Air Force had reviewed the matter and decided to reverse the setoff (on April 5, 2000). Assistant United States Attorney Zane, after encountering some difficulty in identifying precisely who was acting as the debtor's counsel, communicated that decision to Mr. Gins, the debtor's bankruptcy counsel, on April 10, 2000.

Instead of advising the Air Force that it needed merely to undo the exercise of the right of setoff, without paying the debtor the invoice owed the debtor, the debtor's "Notice of Contempt" clearly stated that contempt could be avoided only by remitting the setoff funds to the debtor. The debtor has only itself to blame for overstating the debtor's case in a transparent attempt opportunistically to capitalize on what was but a technical violation by the Air Force. In the face of that overstated demand, it is not surprising that the Air Force proceeded with due deliberation in determining what the automatic stay actually demanded of it.

Rather than wait a reasonable period of time for a response, the debtor unnecessarily rushed preparing a motion for contempt and filing the same. The debtor clearly hoped to capitalize on the Air Force's technical violation of the stay, and sought to use it to coerce a remedy to which the debtor was not entitled.

Notwithstanding, it is appropriate to award some fees to the debtor for bringing the stay violation to the Air Force's attention, and for attorney's fees incurred in obtaining that recovery. *In re Esposito,* 154 B.R. at 1015; *Gen. Motors Acceptance Corp. v. Miller (In re Miller),* 10 B.R. 74, 76 (Bankr.S.D.Ohio 1981). However, the

fees ought to have been minimal, instead of the completely overblown award sought by the debtor here.

To bring the stay violation to the Air Force's attention required no more than sending a simple two-sentence letter saying (1) the Air Force violated § 362(a)(7) by exercising its right of setoff, and (2) the Air Force was required to vacate the exercise of the right of setoff. That could have been accomplished in one-half hour.

Although once the Air Force announced its decision to vacate the setoff, most debtors' attorneys would then not bother to file a motion to recover attorney's fees for the one-half hour of effort the letter had taken, the court will not second-guess the debtor on that score. However, a motion for contempt for such relief (including preparation of a declaration setting forth the prior one-half hour and the preparation time of the motion) would not have required more than one hour.

If a request for contempt sanctions of compensation for one and a half hours of attorney time had been contested—which is extremely doubtful—the court nevertheless could have decided the debtor's entitlement to such compensation on the papers. As it was, the debtor engaged in an overblown motion for contempt, seeking a windfall remedy plainly barred by *Strumpf*, and put the Air Force, the court, and, indeed, the debtor itself to unnecessary litigation and attendant expense.

Accordingly, the court will award 1.5 hours of attorney time. Although the debtor has sought fees at an hourly rate of $140.00 to $275.00, the appropriate hourly rate, pursuant to 11 U.S.C. § 106(a)(3),

must be capped at $137.04 (as calculated in the United States' Opposition to Debtor's Application for Attorney's Fees at 7 n. 3).[1] Accordingly, the court will award attorney's fees of $205.56. An order follows.

---

1. Section 106(a)(3) incorporates 28 U.S.C. § 2412(d)(2)(A) which caps fees at $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding, justifies a higher fee." The court has adjusted the cap for the cost of living but there is no special factor warranting awarding a higher fee for work that the court believes was of dubious necessity, a case of making a mountain out of a molehill.